[No. 4806.]

Johnson v. The People.

1.  Appellate Practice—Bill of Exceptions—Affidavits—Statutory Construction.

The statute authorizing a bill of exceptions to be made by affidavits when the judge refuses or neglects to allow or sign it, does not apply where the judge does make and authenticate a bill of exceptions but refuses to insert therein certain matters with reference to the conduct of the judge during the trial claimed by plaintiff in error to have been prejudicial, and such matters cannot be considered by the supreme court upon affidavits.

2. **Abortion — Murder — Malice — Information — Statutory Construction.**

In 3 Mills' Ann. Stats., section 1209, defining the crime of willfully and maliciously administering poison with intent to kill, also defining the crime of administering such poison, substance or liquid, or using or causing to be used any instrument, with the intention of causing the miscarriage of any woman with child, and providing that if any woman, by reason of such treatment, shall die, the person causing the death shall be guilty of murder, the word "maliciously," used in the first part of the section, applies only to the definition of the crime of administering poison with intent to kill, and does not apply to the definition of the crime of attempted abortion or of murder committed in such attempt, and in an information charging either of the last named crimes, it is not necessary to allege that the act was maliciously done.

3. **Murder—Attempt to Commit Abortion—Malice—Informations.**

Malice is not an essential element of murder committed in an attempt to cause the miscarriage of a woman with child, and in an information charging such murder it is not necessary to allege that the act was done maliciously or with malice.

4. **Informations and Indictments—Negativing Exceptions.**

In an information or indictment it is only necessary to negative such exceptions and provisos mentioned in the statute defining the crime charged, as are descriptive of the offense, without reference to the position or location of the same in the statute.

5. **Same—Murder—Attempt to Commit Abortion.**

In an information, under 3 Mills' Ann. Stats. section 1209, charging the crime of murder committed in procuring or attempting to procure the miscarriage of a woman with child, it is not necessary to negative the exceptions mentioned in the statute as matters of justification.

6. **Evidence—Murder—Attempt to Commit Abortion—Declarations of Deceased.**

In a prosecution for murder committed in an attempt by defendant to produce an abortion upon deceased, where deceased sought the services of defendant and voluntarily submitted to the operation, the declarations of deceased made to her husband soon after and closely attendant upon the attempt to produce the abortion, to the effect that defendant had operated upon her and produced a miscarriage, was admissible in evidence.

7. **Evidence—Striking Out Incompetent.**

In a prosecution for murder committed in an attempt to

15

produce an abortion, where a witness, without any objection by defendant, testified to a conversation had with deceased shortly before her death without any foundation having been laid for its admission as a dying declaration, and after the witness had been cross-examined by defendant and had completed his testimony, defendant moved to strike out the testimony, which motion was taken under advisement by the court and afterwards sustained, and the jury were told that the testimony was rejected and in the final instructions were told not to consider the testimony in arriving at their verdict, the failure of the court to strike out the evidence immediately after its admission was not prejudicial error, and was cured by the instructions.

8.   Murder—Manslaughter—Abortion.

Where, in an attempt to procure the miscarriage of a woman with child, the death of the woman is caused, there is no element of manslaughter in the homicide, and in a prosecution for murder committed in an attempt to procure such miscarriage, it is not error to refuse to instruct the jury as to the law of manslaughter.

9.   Practice in Criminal Cases—Juries.

In the trial of a criminal case a mere statement of defendant's counsel, unsupported by affidavit, that a newspaper containing a garbled and incorrect account of the trial had been seen and read by some of the jurors to the prejudice of defendant, was not sufficient to justify the court in stopping the trial to enter upon an investigation of the charge.

10.   Juries—Impeachment of Verdict.

A juror will not be permitted to impeach his own verdict by affidavit.

11.   Motion for New Trial—Impeachment of Verdict—Appellate Practice.

Where, on a motion for a new trial, there were affidavits tending to show that some members of the jury, during the trial, had read a newspaper containing a garbled account of the trial prejudicial to defendant, and also affidavits to the contrary, the supreme court will not reverse the action of the lower court in deciding the issue of fact against defendant.

*Error to the District Court of Pueblo County: Hon. N. W. Dixon, Judge.*

The defendant was tried and convicted for a violation of the second clause of a statute, which reads: "Every person who shall, willfully and mali-

ciously, administer, or cause to be administered to, or taken by, any person, any poison or other noxious or destructive substance or liquid, with the intention to cause the death of such person, and being thereof duly convicted, shall be punished by confinement in the penitentiary for a term not less than one year, and not more than ten years; and every person who shall administer, or cause to be administered, or taken, any such poison, substance or liquid, or who shall use, or cause to be used, any instrument of whatsoever kind, with the intention to procure the miscarriage of any woman then being with child, and shall thereof be duly convicted, shall be imprisoned for a term not exceeding three years in the penitentiary and fined in a sum not exceeding one thousand dollars; and if any woman, by reason of such treatment, shall die, the person or persons administering or causing to be administered such poison, substance or liquid, or using or causing to be used, any instrument as aforesaid, shall be deemed guilty of murder, and, if convicted, be punished accordingly, unless it appear that such miscarriage was procured or attempted by or under advice of a physician or surgeon with intent to save the life of such woman or to prevent serious and permanent bodily injury to her.'' —Session Laws 1891, 122; Mills' Ann. Stats., sec. 1209.

The information, omitting formal parts, charges that the defendant ''unlawfully, feloniously and willfully employed a certain instrument in and upon one Pearl Gordon, who was then and there a woman pregnant with child, and did then and there unlawfully, feloniously and willfully introduce said instrument into the womb of the said Pearl Gordon, with intent to produce and procure a miscarriage of the said Gordon, the defendant then and there knowing that the use of said instrument would accomplish the said

purpose, and it not being then and there necessary to produce such miscarriage for the preservation of the life of the said Pearl Gordon, by reason whereof the said Pearl Gordon, languishing, etc., died.''

Mr. W. B. McNEEL, Mr. H. E. ROBINSON and Mr. C. W. BRAMEL, for plaintiff in error.

Mr. N. C. MILLER, attorney general, and Mr. H. J. HERSEY, for the people.

Mr. JUSTICE CAMPBELL delivered the opinion of the court.

When the defendant lodged the record here and applied for a supersedeas, it was discovered that her bill of exceptions, incorporated in the transcript, was so imperfect and incomplete that, under our rules, some of the errors relied upon could not be considered. Acting upon the court's suggestion, her counsel asked, and was granted, leave to withdraw the record for correction. Upon application below some of the defects were cured, but the trial judge refused to insert in the bill certain recitals relating to the conduct of the trial, to his treatment of defendant's counsel, his manner of ruling on objections made by the latter, and to certain of his remarks calculated to disparage them in the eyes of the jury, and a general course of conduct on his part throughout the trial which evidenced, as defendant says, a strong feeling against her. Failing in the attempt to get into the bill of exceptions the desired statements, defendant seeks now, by affidavits, to supplement the same, and asks us to regard as incorporated therein matters and things which the affidavits say occurred at the trial, but which the presiding judge virtually denies, by refusing, at defendant's request, to insert them.

Where, as here, the judge makes a return with respect to such matters, and settles and authenticates

a bill of exceptions, the statute, permitting a bill to be made by affidavits when the judge refuses or neglects to allow or sign it, does not apply.—*Holland v. People,* 30 Colo. 94, 103.

It follows, therefore, that defendant cannot be heard upon some of the objections, relating to the treatment of her counsel by the judge, and to his alleged unfairness to her, on which she strongly relies, because there is nothing in the only properly authenticated record before us on which they rest. This reference is pertinent at the outset, and will serve to explain the absence from the opinion of discussion of some of the questions argued in defendant's briefs.   We proceed now to consider the objections which are grounded on the record.

1. . The information is assailed upon various grounds.   First, it is contended that "maliciously," in the first, applies to the crime defined in the second, clause of the statute, and since "maliciously," or its equivalent, is not in the information, the pleading is fatally defective.

"Maliciously" does apply to the crime defined in the first clause, which consists in the administering of poison with intent to cause death, but is, in no sense, applicable to the administering of poison, etc., or using instruments, with intent to produce the miscarriage of a woman pregnant with child, which is the crime defined in the second clause.   This has been expressly ruled in *Dougherty v. The People,* 1 Colo. 514, 517.   The information, therefore, is not defective for the omission of that word.

2.   It is further said that, inasmuch as this statute makes the producing of a miscarriage murder if the woman dies, malice is an essential ingredient thereof, though not expressly so declared therein, because, under our general statute relating to mur-

der, malice is an essential element of every murder, however committed.

The proceeding against defendant was not under the general murder statute, but was based upon this particular statute which makes the doing of the act therein prohibited, in a certain contingency, murder (which, of course, is murder of the second degree), and it is sufficient to set forth the offense in the language of the statute which was done; and proof that the act prohibited thereby was committed establishes the ingredient of malice, even if that element should be held essential.

3. A more serious objection urged is that, since this statute contains at least two, and probably three, special grounds of justification for the acts generally prohibited, it is necessary thereunder to negative all these exceptions in the indictment or information, which was not done in this case. That these exceptions do not refer to the first clause, is manifest, for that clause defines the offense of administering poison, etc., with intent to cause death, and it would be absurd, as well as inconsistent, to say that such offense is to be excused for the reasons contained in the proviso; hence we must assume that the general assembly never intended, by one clause of a section, to nullify another clause of the same section.

It will be observed, that the matters of justification are contained in the last sentence of the section, beginning with the word "unless," and this substantive clause is in the nature of a proviso to the effect that if it shall appear that the miscarriage was procured, in the circumstances therein specified, there is no crime. The defendant contends, and the attorney general is disposed to concede, that, in this proviso or substantive clause, there are three distinct justifications for the act prohibited in the antecedent clause: (1) If the act is done by or under the advice

of a physician or surgeon; (2) With intent to save the life of the woman; or (3) to prevent serious and permanent bodily injury to her.

The general rule, as usually announced, is that exceptions and provisos in the enacting clause of a statute must be negatived, and such as are not in the enacting clause need not be negatived, the latter being matters of defense.—10 Enc. Pl. & Pr. 495. The rule, thus stated, is sufficiently precise to cover most of the cases, but we apprehend that the more accurate expression of the doctrine is that only such exceptions and provisos need be negatived as are descriptive of the offense, without reference to the position or location of the same in the statute. In *State v. Miller,* 24 Conn. 527, it was held that it is immaterial whether the proviso or exception be contained in the enacting or subsequent clause, if it only follow a general prohibition; but if there be no general prohibition in the description of the offense, then it is only a limited prohibition, and the prosecutor in the latter case must allege the circumstances necessary to show that the thing prohibited has been done.

Substantially the same doctrine was announced in the leading case of *United States v. Cook,* 17 Wall. 168, followed by us in *Packer v. People,* 26 Colo. 306, wherein it was said:

"Where a statute defining an offense contains an exception, in the enacting clause of the statute, which is so incorporated with the language defining the offense that the ingredients of the offense cannot be accurately and clearly described if the exception is omitted, the rules of good pleading require that an indictment founded upon the statute must allege enough to show that the accused is not within the exception, but if the language of the section defining the offense is so entirely separable from the exception that the ingredients constituting the offense may

be accurately and clearly defined without any reference to the exception, the pleader may safely omit any such reference.  *    *    *

"When the exception or proviso is in a subsequent substantive clause, the case contemplated in the enacting or general clause may be fully stated without negativing the exception or proviso, as a *prima facie* case is stated, and it is for the party for whom matter of excuse is furnished by the statute or contract to bring it forward in his defense."

In *State v. Abbey,* 29 Vt. 60, the same doctrine is thus expressed:

"In saying that an exception must be negatived when made in the enacting clause, reference is not made to sections of the statute, as they are divided in the act; nor is it meant that, because the exceptions are contained in the section containing the enactment, it must for that reason be negatived. *    *    *    The question is, whether the exception is so incorporated with, and becomes a part of, the enactment, as to constitute a part of the definition or description of the offense.  *    *    *    'It is the nature of the exception and not its location' which determines the question.  *    *    *    The same principle should govern this class of cases which governs other classes, and the exceptions should be negatived only where they are descriptive of the offense, or define it; but where they afford matter of excuse merely, they are to be relied upon in defense.  The question is one not only of pleading, but of evidence, and where the exceptions must be negatived in the indictment, the allegations must be proved by the prosecution, though the proof may involve a negative."

In *State v. Rupe,* 41 Tex. 33, the indictment was under a statute wherein the exception was in a section other than, and following, that containing the enacting clause, and the objection was that the plead-

ing did not negative the fact that the act charged was done by the advice of a physician to save the life of the mother, which was the exception made. The court held it not necessary to negative this exception, since it was a matter of defense on the trial of the accused, citing *Jenkins v. State,* 36 Texas 638.

*Territory v. Burns,* 6 Mont. 72; *State v. Ah Chew,* 16 Nev. 50, and *The Territory v. Scott,* 2 Dakota 212, contain good discussions of this subject in line with our conclusion.

Possibly the larger number of cases found in the books are to the effect that under statutes providing that the administration of drugs or use of instruments with intent to produce abortion shall be criminal unless advised by a physician as necessary to save the mother's life, the indictment or information should allege that the act committed was not within the exceptions.—1 Cyc. Law and Procedure, 167 *et seq.,* where is found a concise summary of the law of abortion and a collation of the authorities. *State v. Lee,* 69 Conn. 186, announces the rule that, under a statute similar to the one under consideration, exceptions must be negatived in the indictment or information, and the state must establish the truth of the negative averment, and in the absence of any evidence on the question, the presumption that the miscarriage was not necessary to save the life of the mother will be sufficient to convict. This decision has been criticised as illogical, because if the exception must be negatived in the indictment and proof of the negative made by the state, in the absence of any evidence at all to show that the act was not necessary the defendant ought to be acquitted instead of convicted under a presumption of law merely. However that may be, we think that, even under the general rule above announced, the exceptions con-

tained in our statute are matters of defense, which must be made to appear by the defendant from the evidence, and need not be negatived in the indictment, or the negative proved by the prosecution. The exceptions are clearly in the nature of a proviso. The offense defined or described in the second clause of the section is entirely complete wholly without reference thereto. Indeed, it was so declared by this court in the Dougherty case, *supra,* where it was said by Mr. Justice Belford that, ''It is the *administering* the noxious substance or the use of the instrument with intent to produce miscarriage that makes up the crime.'' The indictment in that case, based upon the same statute, did not contain a negative of the exception, though no point seems to have been made upon it, and the same observation applies to the Solander case, *infra,* which goes to show the understanding of the profession in this state to be that the exceptions are not a part of the description of the offense.

The statute was passed upon the presumption of law, which in turn rests upon the common experience of mankind, that the ability to bear and bring forth children is the rule, and that the necessity of procuring an abortion or miscarriage in order to save the life of mother or child is the rare exception. The prohibition against the act is general and includes every person, and the exception, which is in a substantive and independent clause at the close of the section, follows not only the complete description of the offense, but the penalty attached thereto. Mr. Bishop, in vol. 1, Bishop's New Criminal Procedure, § 639 *et seq.,* expresses what we consider the doctrine which is clearly applicable to the case before us and in consonance with our conclusion:

''The true view plainly is that in the absence of controlling language in the statute, if the matter

thus referred to is such as ought, on the general principles of pleading, to be alleged by the party assuming the burden of the charge, it should be brought into the indictment by proper negative averments; if not, then no allusion to it need be made.''

That it was intended that matters constituting the justification for the act done should be made to appear from the evidence, and that it is not necessary to negative them in the information or indictment, but that they are matters of defense to be shown by the defendant, are apparent from the nature of the exceptions themselves. While it might be, and generally is, within the power of the prosecution to show by circumstantial evidence that the miscarriage was not produced with the intent to save the life of, or prevent serious or permanent injury to, the woman, it would be almost, if not quite, impossible, unless a defendant himself confesses, to show that the abortion had not been procured or attempted under the advice of a physician or surgeon.

The New York authorities go beyond anything that it is necessary to rule here to save this information. Under chapter 181, Session Laws of N. Y. 1872, which prohibits the use or employment of any instrument with intent to produce miscarriage, ''*unless* the same shall have been necessary to preserve her life or that of such child,'' etc., it has been held that it was not incumbent upon the state to negative the exception in the indictment or to prove the negative at the trial. In the New York statute the exception unquestionably was in the enacting clause itself, and under some of the authorities would, for that reason, be a part of the description of the offense, and yet the New York rule is sustained by the weight of authority which says that, though this exception is in the enacting clause, if it is not, in fact, a part of the description of the offense, the

indictment need not state that the defendant is not within it.—*Bradford v. The People,* 20 Hun. 309.

The decision in this case was said to be controlled by *Fleming v. The People,* 27 N. Y. 329. The same doctrine was announced in *People v. McGonegal,* 17 N. Y. Supp. 147. This case was affirmed by the court of appeals in 136 N. Y. 62. The question as to the negativing of the exception was not raised in the court of last resort. The doctrine seems to be so well established in New York that no question was there raised concerning it.

If, however, we are in error as to the foregoing, and if the statute requires the pleader to negative all of the exceptions because the description or definition of the offense is incomplete without a reference to them, and that the same are found in the enacting clause itself and as a part of the description of the offense—still, this information, under some authorities, is a sufficient compliance with the requirements of the statute. In *Commonwealth v. Sholes,* 95 Mass. 554, an abortion case, the pleading there considered alleged that the defendant committed the act "unlawfully," and it was held that "unlawfully" negatives or precludes any inference or possibility that the act was done by a surgeon for the purpose of saving the life of the woman, or under any other circumstances which would furnish a justification. It was said that any unlawful use of an instrument, with intent to produce miscarriage, is made criminal by the statute. To the same purport is *Commonwealth v. Brown,* 121 Mass. 69.

Other instances, in our own reports, somewhat analogous to the case at bar, wherein the decision was that exceptions in a statute need not be negatived in an information based thereon, are: *Poole v. People,* 24 Colo. 510; *Mitchell v. People,* 24 Colo.

532; *Peckham v. People,* 32 Colo. 140; *Langan et al. v. People,* 32 Colo. 414.

4. The prosecution called as a witness the husband of deceased who, over defendant's general objection of incompetency, was permitted to testify to a conversation which he had with his wife soon after she returned from a visit to defendant, in which she made declarations to the effect that she had, a short time theretofore on the same day, called at defendant's office and entered into an understanding or agreement with her, whereby, for a consideration of fifty dollars, Dr. Johnson produced the miscarriage, and, to use the exact language of the witness, "told her that it would be impossible for her to bear a child without risking her life, and then and there the defendant (the physician) operated on her and fixed her up all right." Counsel strenuously insist that there was error in admitting this purely hearsay testimony. In *Solander v. The People,* 2 Colo. 48, a prosecution for a similar offense under the same statute, a witness was permitted to testify to declarations made by the deceased which involved the defendant. The court, by Hallett, C. J., in an exhaustive opinion, in speaking to this point, after alluding to holdings in New York and Massachusetts that a woman on whom an abortion has been produced is not an accomplice in the commission of the crime, but rather a victim of the act, said:

"But it is not necessary that she should appear to be an accomplice in order to make her declarations accompanying acts done in furtherance of the criminal purpose evidence against another, who has joined in the unlawful act. She may be, and usually is, a party to the illegal combination to effect the abortion, and as this is the ground upon which the declarations are admitted, it can make no difference that she is not criminally liable for the act done. In

some cases, probably, the woman is an unwilling subject, submitting to, but not actively joining in, the unlawful attempt, and in such cases the community of purpose which alone can make the acts and declarations of one admissible as evidence against his associate in crime, may be wanting. But where it appears that the woman not only submits to the unlawful attempt, but actively promotes it, by seeking the aid of others, and eagerly adopting the means suggested to accomplish the crime, it cannot be claimed that she is not a party to the criminal design. If the woman is not technically an accomplice, she may, nevertheless, conspire with others to produce the abortion, and the conspiracy being shown, her acts and declarations in furtherance of the common design are evidence against others engaged with her in the criminal act.—4 Stark. Ev. 403; 3 Greenl. Ev. 94.''

And it was further held that, although the statement of the deceased was made after the interview with the prisoner, and in one sense was a history of a past event, it was during the pendency of the criminal enterprise, and closely attendant upon an act done to promote the criminal purpose. It was therefore held admissible under the principle of *res gestae,* and, because these declarations were attendant upon an act done in furtherance of the criminal design and explanatory of it, they were also proper for the consideration of the jury, in connection with the other evidence in the cause, to determine the fact of conspiracy as well as other facts.

The foregoing references to the Solander case would seem to make the evidence of the witness Gordon admissible. But counsel for defendant maintain that the rule there laid down does not govern here because of the material differences between the facts of the two cases in the following particulars:

In the Solander case the witness who was permitted
to testify to the declarations was a coconspirator,
and the conspiracy was not denied; while here Gor-
don was not a coconspirator, and the conspiracy was
denied.   Other similar differences as to facts are
pointed out in argument.

There is no difference in principle between the
facts of the present case and those of the Solander
case.   That Gordon was not a coconspirator, and
that there was a denial of the conspiracy, did not
make incompetent his testimony with respect to
declarations made by his wife, who certainly, if her
evidence was to be believed, had entered into the
unlawful agreement with the defendant.  The declar-
ations of deceased to which her husband testified were
made soon after her interview with defendant, and
were in themselves acts, and accompanied by other
acts, in furtherance of the criminal design, and
closely attendant upon the same, and therefore admis-
sible under the doctrine of the Solander case.   There
was corroborating evidence as to all essential ele-
ments of the crime.

5.   The county coroner, under whose direction
the autopsy was made, was permitted to testify in
behalf of the people to a conversation which he had
with deceased shortly before her death, in which
the latter made statements strongly incriminating
defendant, expressly declaring that defendant used
an instrument upon her that caused the miscarriage.
The testimony certainly was hurtful to defendant
if it remained with the jury.   That it was clearly
inadmissible, being purely hearsay, and no proper
foundation having been laid for it as a dying declara-
tion, is conceded by the attorney general.   At the
time the question was propounded and the answer
given, no objection thereto was made by defendant's
counsel.   At the close of the examination in chief

defendant's counsel cross-examined the witness at some length, and at its conclusion moved the court to exclude all the testimony upon the ground that it was hearsay, and the motion was taken under advisement by the court. Thereafter, and it does not appear at just what stage of the trial, or how long after the same was reserved for decision, the court, apparently of it own motion, and before the cause was submitted to the jury, sustained the motion, remarking to the jury that the testimony was rejected; and when the jury were charged, the court specifically instructed them that the entire testimony of the coroner as to the conversation between himself and deceased was inadmissible and stricken out, and must be totally disregarded by them in arriving at their verdict.

Notwithstanding this action of the court, defendant's counsel insist that the mere failure of the court immediately after its admission to strike out the objectionable evidence and withdraw it from the jury, with a caution to disregard it, was prejudicial error; in other words, that the harmful impression was made at the time of the reception of the evidence, and the error was not cured by subsequently withdrawing, and instructing the jury to disregard it.

Unquestionably, there are cases which properly hold that where seasonable objection is made thereto, the fact that the court withdrew objectionable testimony does not cure the error in admitting it where the court is of opinion that the unfavorable impression still remains with the jury. Had defendant objected to the introduction of this testimony at the proper time, and not waited until after the entire examination of the witness was closed, quite another question would be presented; but where counsel themselves did not see fit to interpose any objection, or make a motion to strike, until after the testimony

was in, the mere fact that the court took the motion under advisement for a short time, and thereafter excluded it from the jury, is sufficient and all that could be reasonably asked of the court, in the circumstances, to cure the error, if error it be, in permitting the testimony to be given.

In *Hopt v. The People,* 120 U. S. 430, where a similar objection was made, it was said that while in exceptional instances such strong impressions may be made upon the minds of the jury by illegal and improper testimony that its subsequent withdrawal will not cure the effect caused by its submission, yet such cases are exceptional, and usually, if evidence was erroneously admitted, its subsequent withdrawal from the case with appropriate accompanying instructions to the jury to disregard it, will cure the defect. We think the error, if any, in this case was cured. See, also, 1 Thompson on Trials, § 716.

6. At considerable length defendant argues that the evidence was insufficient to sustain the verdict. Without discussing in detail the unsavory record, we dispose of this objection by saying that a most careful examination of the record convinces us that the verdict is not against the evidence. This conclusion, also, disposes of another assignment that the court should have directed a verdict for the defendant when the people closed its case, and also the point made in the motion for a new trial that the verdict was not sustained by the evidence.

7. General objections are made to the instructions of the court. None of these calls for any extended discussion, for a careful examination of the charge as a whole shows that it was fair, and defendant given the benefit of everything she was entitled to receive, under the law of the case.

The refusal of the court to instruct the jury as to the law of manslaughter was right. Where the

woman dies as the result of the treatment referred to in the statute, the person administering such treatment is declared to be guilty of murder, so that no element of manslaughter was present.

8.   While the trial was in progress, and in the presence of the jury, defendant's counsel called the attention of the court to the alleged fact that a newspaper containing a garbled, incorrect and imperfect account of the court proceedings upon the trial had been seen in the presence of, and read by, some one or more of the jury, greatly to the prejudice of defendant. Counsel asked that the court should then institute an inquiry, or permit him to interrogate the jury to ascertain the truth of the statement.   The court refused the request, and in language which counsel claims was insulting to him and harmful to his client, characterized the incident as an insult to the court.

The record does not bear out the contention of counsel as to just what occurred, though in the affidavits hereinbefore referred to they are sustained. The court, in the exercise of a wise discretion, might have permitted the investigation to be made; but upon the bare statement of counsel, without any affidavit in its support, it was not incumbent upon the court to stop the trial and enter upon such an investigation.   In aid of defendant's motion for a new trial were some affidavits, including that of a juror, tending to show that such newspaper had been in the possession of some one or more members of the jury and read.   Contrary affidavits, some by other jurors, were filed tending to show that no such newspaper was in the possession of, or read by, any member of the jury.

It is scarcely necessary to say that a juror will not be permitted to impeach his own verdict by affidavit, and we cannot say that the court was wrong

in deciding the issue of fact against the contention of defendant, or that defendant was thereby prejudiced.

The record before us exhibiting no prejudicial error, the judgment is affirmed.

*Affirmed.*