## No. 11,135.

## GRIFFIN *v.* THE PEOPLE.

Decided January 5, 1925.

Plaintiff in error was convicted of an assault with intent to murder.

### *Affirmed.*

### *On Application for Supersedeas.*

1. CRIMINAL LAW—*Continuance.* The granting of a continuance is largely within the discretion of the trial court.

2. *Continuance—Refusal.* Where defendant in a criminal case was kept in jail, had no preliminary examination, and no knowledge of what witnesses against him would testify, it is held there was no abuse of discretion in overruling his motion for a continuance, no prejudice resulting, and he having had a fair trial.

3. *Witnesses—Cross Examination.* Refusal to permit counsel in a criminal case to cross examine the prosecuting witness on a collateral issue not mentioned in his direct examination, held not error.

4. *Defendant Intoxicated—Source of Liquor Supply.* The defendant was somewhat intoxicated at the time of the commission of the alleged crime. The court required him to testify when, where, and from whom he purchased the liquor. Under the facts disclosed, this testimony is held not prejudicial.

5. *Homicide—Instructions.* In a prosecution for an assault with intent to commit murder, instructions to the jury defining the two degrees of murder, held not error.

6. *Intent—Instructions.* Error, if any, in instructing the jury that intent, in a criminal case, was not susceptible of proof by direct evidence, held cured by other instructions given.

*Error to the District Court of Delta County, Hon. Thomas J. Black, Judge.*

Mr. W. H. BURNETT, for plaintiff in error.

Mr. WAYNE C. WILLIAMS, Attorney General, Mr. JOSEPH P. O'CONNELL, Assistant, for the people.

*Department Three.*

MR. JUSTICE SHEAFOR delivered the opinion of the court.

PLAINTIFF in error, defendant in the court below, and so referred to here, was tried and convicted of an assault upon, with intent to murder, one Gus Brodt, and sentenced to the penitentiary for a period of not less than five nor more than ten years. Defendant brings the case here and applies for a supersedeas. He requests that the case be disposed of on this application.

Defendant's first contention is that the court erred in denying his motion for a continuance for the term. The defendant was arrested July 9, and not having given bail was confined in the county jail until the trial. On July 21, the first day of the term, the information was filed, no preliminary examination having been held. At that time the defendant presented the motion for a continuance, supported by his own affidavit. The case was set for trial July 28, and was tried at that time.

The granting of a continuance is largely in the discretion of the trial court. Neither the motion nor the supporting affidavit presented any reason for the continuance, except that defendant had been kept in jail since his arrest; had had no preliminary examination; and that he had no knowledge as to what the witnesses whose names were endorsed on the information would testify, and therefore had no opportunity to prepare for his defense.

At the beginning of the trouble between defendant and the complaining witness, there were no persons present other than the participants. No showing was made that time was required to procure witnesses. It does not appear from the record that any prejudice or injury resulted to defendant by reason of the denial of the continuance. It does appear that defendant was ably defended, his rights fully protected, and that in all respects he had a fair trial. The witnesses defendant desired were in attendance and tes-

tified.  The court did not abuse its discretion in refusing the continuance.

The defendant complains that the court erred in refusing to allow him to cross examine the complaining witness as to his alleged attack upon another person some two days prior to the alleged assault upon him by defendant.  In this there was no error.  It was not cross examination.  At that time nothing had appeared to in any way connect that affair with the trouble between the complaining witness and defendant.

Moreover, the defendant was permitted to testify that Brodt two days before had had trouble with one Size about taking a board out of a ditch; that he had assaulted Size with a shovel, and that defendant was informed of this assault on Size before the trouble between defendant and the complaining witness.

The defendant called as a witness Joe Size and sought to prove by him that Size had a conversation with the complaining witness Brodt on Sunday morning July 6 in regard to a board that Brodt had put in the ditch which turned the water into his headgate, and what that conversation was, what happened at that time, and also as to whether Brodt had in fact placed a board in the ditch. The court excluded this evidence.  The defendant's theory in offering this evidence was, as stated by his counsel: "We expect to show that Mr. Brodt started to take revenge on any person who interfered with his placing this board in the ditch.  When he thought it was Mr. Size, he attacked him; and when he learned to the contrary, he decided to attack someone else."

For a better understanding of defendant's position, it may be well to state what occurred at the time of the alleged assault, as related by the prosecuting witness.  He testified that he was in a buggy driving down the road; that he stopped to unhook a cultivator which was hitched behind the buggy; that recognizing Griffin as he came up, he said "Hello, Griffin;" that Griffin said in reply, "You stole my water you ——; I am going to kill you;" that the

prosecuting witness jumped out of the buggy; that defendant then said, "You stole the bread and butter from my wife and children, I am going to kill you," "and he took up the gun and aimed for me and I went after him." We think the court properly excluded the evidence offered as to who took the board out of the ditch, and all the conversation relating thereto. The evidence offered was not material, and would have raised a collateral issue. The only effect of such evidence would have been to divert the mind of the jury from the main issue. The defendant claims that he used the gun, as a club, in self defense, not that he fired the shot in self defense, and claims that the gun was accidentally discharged while the two men had hold of it.

It appears that defendant at the time of the shooting, and afterward, was somewhat under the influence of intoxicating liquor, and the court required him to testify as to when, where and from whom he purchased the liquor. Defendant claims that this was error. This evidence may have been immaterial, but if so its admission was not prejudicial to defendant. He was guilty of no crime in purchasing the liquor, and he had admitted its possession. This evidence could not have had the effect of drawing the mind of the jury from the main fact in issue, nor to excite prejudice, mislead or confuse the jury.

Defendant contends that the court erred in instructing the jury as to what constituted the two degrees of murder. We do not think so. It was proper and necessary that the jury should be informed as to the elements constituting murder of the first degree and murder of the second degree as well. If the defendant was guilty of an assault with intent to murder, this would be true whether it would have been murder in either the first or second degree, if death had resulted. *Dillulo v. People,* 56 Colo. 339, 342, 138 Pac. 33.

The court instructed the jury, among other things, that in order to constitute the offense of an assault with intent to commit murder, all of the elements of murder in the

first degree must be present, except that the assault does not result in a killing, and then proceeded to give the statutory definition of murder of the first degree and murder of the second degree. The court further told the jury that to commit murder of the first degree "the killing must have been done wilfully, deliberately and with premeditation, that is, intentionally, sanely and with a prior deliberation, and without legal excuse or justification."

The court further instructed the jury that malice was an essential element of murder which must be proved beyond a reasonable doubt, and also gave the statutory definitions of express and implied malice. The court gave instruction No. 7 which reads: "You are instructed that the intent with which an act is done is a mental process, and, as such, generally remains hidden within the mind where it is conceived, and is rarely, if ever, susceptible of proof by direct evidence. And you are further instructed that the intent with which an act is done may be inferred or gathered from the outward manifestations, or by the words or acts, of the party entertaining it, together with all the facts or circumstances surrounding or attendant upon the crime with which the defendant is charged. Every person who is of sound mind is presumed by law to intend what his acts indicate his intentions to have been."

All of the foregoing instructions were objected to by defendant. No. 7 was objected to because, as stated by counsel, "It states that intent is rarely, if ever, susceptible of proof by direct evidence, * * * and this instruction would practically withdraw from their (the jury's) consideration the testimony of the defendant, by telling them that it is not subject to proof by direct evidence."

Assuming, but not deciding, that there was error in this instruction, it was cured by other instructions given. In No. 15 the court instructed the jury: "You are the sole judges of the credibility of the witnesses who have testified in this case, and the weight and value to be given to their testimony * * * all these matters, together with

all the other evidence, may be considered by you, and it is your province to give to the testimony of each witness such value as you may deem proper, and in considering whom you will or will not believe, you may take into account your experience and relations among men. * * * You are further instructed that the defendant in this case is a competent witness in his own behalf, and the credibility of his evidence is to be tested by the same tests as are applied to the testimony of any other witness, taking into consideration the fact that he is interested in the result of the trial. You are not at liberty to arbitrarily and capriciously disregard the undisputed testimony of a witness unless there is some evidence indicating that his testimony is false."

In No. 18, the court instructed the jury: "You should not find the defendant guilty under the first count in the information unless you find and believe from the evidence beyond a reasonable doubt that he assaulted Gus Brodt with the intention of killing him, and that the assault was with premeditation and malice aforethought."

In No. 19 the court told the jury that malice and deliberation were essential elements of the crime of assault with intent to murder, and that malice is not necessarily inferred from the use of a deadly weapon or from the mere fact of shooting a person; that it is not an inference or presumption of law, but a question of fact to be found by the jury only from the evidence or facts and circumstances surrounding and attending a transaction sufficient to prove such malice and deliberation beyond a reasonable doubt, and that they should not convict unless the evidence was of such character.

The court in No. 24 instructed the jury as follows: "The intent to murder cannot be implied as a matter of law, but before the defendant can be convicted it must be proved as a matter of fact beyond a reasonable doubt, and in determining whether or not it is so proved you will take into consideration all of the facts and circumstances shown by the evidence in the case."

A careful examination of the entire record in this case convinced us that no prejudicial error was committed by the trial court, and the judgment should be affirmed.

Supersedeas denied and judgment affirmed.

MR. JUSTICE ALLEN, sitting for MR. CHIEF JUSTICE TELLER, and MR. JUSTICE CAMPBELL concur.