## No. 10,822.

## POLOCHIO *v.* THE PEOPLE.

Decided February 2, 1925.   Rehearing denied March 2, 1925.

Plaintiff in error was convicted of the crime of assault with intent to commit rape.

### *Affirmed.*

1.  APPEAL AND ERROR—*Evidence.*  In reviewing a judgment based on conflicting testimony, the court will accept that evidence which supports the verdict.

2.  CRIMINAL LAW—*Venue—Evidence.*  Evidence reviewed, the verdict held amply supported thereby, and the venue of the case under consideration properly laid in the City and County of Denver.

3.  WITNESSES—*Examination—Court Discretion.*  Permission to cross-examine and put leading questions to a witness called by a party, is largely in the discretion of the trial court.

4.  APPEAL AND ERROR—*Witnesses—Impeachment.*  On a contention that the district attorney was permitted to attempt to impeach witnesses called by the state, much of the testimony relied upon to support the contention being omitted from the abstract, the presumption is that rulings of the trial court relating to the subject, were correct.

*Error to the District Court of the City and County of Denver, Hon. George F. Dunklee, Judge.*

Mr. JAMES J. SULLIVAN, for plaintiff in error.

Mr. WAYNE C. WILLIAMS, Attorney General, Mr. JOSEPH P. O'CONNELL, for the people.

*Department One.*

MR. JUSTICE BURKE delivered the opinion of the court.

PLAINTIFF in error, nineteen years old, was tried on a charge of assault with intent to rape.  On a verdict of guilty he was sentenced to the state reformatory.  To re-

view that judgment he brings error. He is hereinafter referred to as defendant.

The charge was that defendant (and others) made an assault upon Ruby Sturgon with intent "forcibly, violently and against the will of the said Ruby Sturgon to ravish and carnally know her." The principal errors alleged, and the only ones here necessary to notice are: (1) That the verdict is unsupported by the evidence; (2) that the venue was not proved, as laid, in the city and county of Denver; (3) that the trial court erroneously permitted the people to cross-examine their witnesses Sturgon and Russamanno; (4) that the trial court erroneously permitted the people to attempt to impeach said witnesses.

Between eleven and twelve o'clock p. m. June 25, 1923, prosecutrix, on her way from a picture show to a dance hall in the city and county of Denver, met one Julian Archaloto on the street. While talking with him an automobile stopped nearby in which were this defendant, who was the owner and driver thereof, also Dominic R. Paulino and Salvator Russamannó. These three had started out earlier with the avowed intention of finding a girl and having intercourse with her. Observing said prosecutrix they decided to make the attempt with her. In the prosecution of their plan they induced Archaloto to join. On some pretext they succeeded in getting the girl into the car and started for the suburbs of the city. The subject of liquor was brought up and the girl agreed to drink wine but declined to touch "moonshine." The last named poison was procured however, and the prospective victim eventually well filled with it. When a lonely point in the road outside the city and county of Denver was reached, and the liquor had presumably had time to do its deadly work, the car was stopped and according to prearrangement Archaloto was left alone with the girl to make the first attempt. He failed and was followed in the same way by Russamanno and Paulino. The latter, not content to depend upon the paralyzing effect of the liquor, attempted

to use actual force whereat the girl cried out. Thereupon the others returned and defendant said, "I don't want any rough stuff pulled off in this car." He then got into the car alone with the prosecutrix and drove a short distance away. In a brief time the others returned. Finding the girl evidently far gone from the effects of the drug they decided to return to the city. The car next stopped at Berkeley Lake within said city and county. What occurred there is in dispute, but accepting, as we are bound to assume the jury did, the evidence which supports the verdict, we learn that two officers who had heard the cries of a woman came upon the party and took it into custody. They found the prosecutrix practically helpless physically and mentally. She was in the rear seat half on the floor of the car between Archaloto and Russamanno. The latter had her head under his arm and a bottle in his hand, and other facts and circumstances are detailed by one of the officers which justified the jury in believing that Archaloto was attempting to have intercourse with her. Defendant and Paulino were in the front seat half turned about and watching the proceedings in the back of the car. When the officers turned their spotlight on the party, defendant called out, "Jiggers, the cop," and Russamanno threw the bottle in the lake. This happened about two o'clock a. m, June 26. Archaloto, Paulino and Russamanno were charged jointly with defendant. They entered pleas of non vult contendre and each was called as a witness for the people on the trial of defendant. The information was sworn to by said Ruby Sturgon. Defendant did not take the stand. There was no request for oral argument here and no reply brief was filed. No error is assigned as to any instruction given or refused and the instructions are not abstracted. Their entire accuracy is therefore presumed.

"Rape is an act of sexual intercourse, accomplished with, by or between a male and a female person, or male and female persons, where such female person is not the wife of the principal perpetrator, as distinguished from acces-

sory to such offense, under any of the following circumstances: * * *.

7. By the male person where both the male and the female person are over the age of eighteen years, if she is prevented from resisting or consenting by and on account of any intoxicating or narcotic substance administered by or with the privity of the accused, and with her consent; and this is rape in the second degree. * * * .

11. By either a male or female person or persons of whatever age where such person, whether male or female, stands by and aids, abets or assists, or who not being present, aiding, abetting, or assisting, hath procured, advised or encouraged the perpetration of the crime of rape, as in this act defined; in which case such person or persons shall be deemed accessories, and deemed and punished the same as principals, whatever the degree of the offense.    Sec. 6689, C. L. 1921.

"An accessory is he or she who stands by and aids, abets or assists, or who, not being present, aiding, abetting or assisting, hath advised and encouraged the perpetration of the crime. He or she who thus aids, abets or assists, advises or encourages, shall be deemed and considered as principal and punished accordingly. Sec. 6645, C. L. 1921.

If this judgment is upheld it must be on the theory that defendant was convicted as an accessory to an assault with intent to commit rape by the administration of intoxicating liquor to overcome the will of the prosecutrix, and that said assault occurred at Berkeley Lake. Hence the argument that this assault occurred, if at all, outside of the city and county of Denver, that no force was used, that prosecutrix was not put in fear, and that there was no proof of absence of consent, need not be noticed. What occurred outside the city and county of Denver is only material as it bears on the question of the intent of defendant and his associates and their concert of action.

1 and 2. The foregoing statement leaves no room for argument on the question of venue or the sufficiency of the evidence. The verdict is amply supported.

3. Prosecutrix admitted signing and swearing to this information with full knowledge of its purport and admitted subsequent efforts to induce the district attorney to drop the prosecution. She had visited the scene of the crime with defendant and his counsel and her examination showed her most unfriendly to the state. For that reason the district attorney asked and was granted permission to "cross-examine" her, or put leading questions to her. Under such circumstances the course of the examination rests largely in the discretion of the trial court. Underhill on Criminal Evidence (2d Ed.), § 212, p. 386. This record discloses no abuse of that discretion. The "cross-examination," if such it may be called, was very mild considering the attitude of the witness.

The alleged cross-examination of Russamanno concerned a trivial detail. It related to a presumed discrepancy between his evidence and a statement he had previously made to the district attorney as to whether it was defendant or Paulino who told him to get out of the car and accost the prosecutrix and Archaloto when the parties first met that night. No possibility of prejudice could arise therefrom.

4. It is contended that the district attorney was permitted to attempt to impeach the prosecutrix and the witness Russamanno. This does not appear. Some of the folios cited in support thereof are largely omitted from the abstract and the others included disclose mere disputes of counsel and statements of the attorney for defendant that an attempt to impeach was being made. Under such circumstances we must presume the rulings to have been correct.

Finding no prejudicial error in the record the judgment is affirmed.

MR. CHIEF JUSTICE ALLEN and MR. JUSTICE ADAMS concur.