No. 11,050.

DAVIS v. THE PEOPLE.

Decided June 22, 1925.

Plaintiff in error was convicted of murder.

*Reversed.*

1.  CRIMINAL LAW—*Conviction—Proof.* Where defendant was convicted of murder in the second degree, and it appeared that one or more apparently credible witnesses had testified to every fact necessary to support the conviction, the verdict will not be disturbed on the ground of lack of proof.

2.  *Practice—Continuance.* A custom of continuing murder cases for one term without cause, if in existence, should be abolished.

3.  *Continuance—Court Discretion.* The matter of a continuance for trial rests in the sound discretion of the court.

4.  *Jury—Open Venire.* The defendant in a criminal case may not object to jurors summoned on a special venire unless he is obliged to take them.

5.  *Jury—Open Venire.* The court may, in its discretion, issue an open venire for jurymen.

6.  *Arraignment—Plea by Counsel.* In a criminal case, entry of plea by counsel for defendant is sufficient.

7.  APPEAL AND ERROR—*Questions Considered.* Only questions presented in the motion for a new trial will be considered on review.

8.  WITNESSES—*Impeachment—Conviction of Crime.* A witness may be asked on cross-examination if he has been convicted of a crime, as affecting his credibility, and such cross-examination

is not to be limited to the single question, reasonable latitude being permitted.

9.  APPEAL AND ERROR—*No Objection.* Assignments of error predicated on the admission of evidence will not be considered on review where no objection was made to the introduction of the testimony.

10. CRIMINAL LAW—*Conviction—Approval of Judge.* The contention that the trial judge, having stated that the evidence would justify a verdict either way, indicated that he thought the evidence insufficient, and necessitated the setting aside of the verdict, overruled.

11. *Special Prosecutor.* Permission for the appearance of a special prosecutor in the trial of a criminal case rests in the sound discretion of the trial court.

12. *Evidence—Dying Declarations—Admissibility.* A dying declaration is admissible if the person making it understands that he is about to die, and it is immaterial how he obtains or expresses that understanding. Such declarations cannot be rejected because there is other evidence from other sources of the same fact.

13. *Evidence—Dying Declaration.* The exclusion of a dying declaration offered by defendant, which conforms to the strictest rules on the subject, is reversible error.

*Error to the District Court of Las Animas County, Hon. A. C. McChesney, Judge.*

Mr. EARL COOLEY, Mr. O. H. DASHER, Mr. DE S. DE-LAPPE, for plaintiff in error.

Mr. WAYNE C. WILLIAMS, Attorney General, Mr. JOSEPH P. O'CONNELL, Assistant, Mr. WILLIAM L. BOATRIGHT, Attorney General, Mr. JEAN S. BREITENSTEIN, Assistant, for the people.

*En banc.*

MR. JUSTICE BURKE delivered the opinion of the court.

PLAINTIFF in error, hereinafter referred to as defendant, was found guilty of murder in the second degree and sentenced to the penitentiary for a term of twelve to fif-

teen years.   To review that judgment he brings error.

The twenty-two assignments are presented under ten propositions and we shall so consider them, stating them more briefly, however, and in different order:   (1)   The evidence was insufficient.   (2)   A continuance should have been granted.   (3)   A special venire was improperly issued.   (4)   Defendant was not arraigned.   (5)   Evidence of a separate offense was erroneously admitted.   (6)   The trial Judge disapproved the verdict, hence should have granted a new trial sua sponte.   (7)   Special counsel was erroneously permitted to assist in the prosecution. (8)   An offer of proof was erroneously rejected.   (9)   A new trial should have been granted for misconduct of the jury.   (10)   A new trial should have been granted for newly discovered evidence.

1.   The victim of the killing was Pearl Brown, a negro. A trial was about to take place between Brown and one Dewey Finley, another negro, before a justice of the peace, at the Y. M. C. A. hall in the town of Berwind, on the evening of March 24, 1924.   The matter in controversy was a board bill.   A considerable crowd had gathered. Defendant, a white man, was befriending Finley and had, the preceding day, without justification or provocation, assaulted Brown in the presence of two peace officers who, in violation of their duty, had not interfered.   Brown was in the room where the trial was to be held and defendant was in a hall outside but in plain sight through an open door.   Both were carrying pistols concealed.   They suddenly drew their weapons and began shooting at each other, defendant firing five shots and Brown probably six.   When the fusillade was over Brown was on the floor mortally wounded, defendant had two shots in him, and four bystanders had been shot, three probably by defendant, the other probably by Brown.   Brown died about 11 a. m. the next day.   That defendant killed Brown is undisputed.   His sole excuse was self defense.   The principal question on the trial was, who was the aggressor. The evidence was conflicting.   Every fact necessary to

convict defendant of murder in the second degree was testified to by one or more apparently credible witnesses. Hence the verdict cannot be disturbed on the ground of lack of proof.

2. Defendant was in a hospital until about April 7, when the information was filed. For some time thereafter he was confined to his home. By May 13, he was able to be about and was in court. One of his counsel resided in the county and was apparently there continuously. On said last mentioned date the cause was set for trial May 28, following, over the objection of defendant who, by his counsel, gave notice that he would later move for a continuance. Such a motion was filed May 27. Most of the reasons given in support of it were wholly immaterial. The principal one was lack of proper preparation for trial because of defendant's injuries and consequent incapacity. A custom in that district of continuing murder cases for one term without cause is suggested. If it existed it should be promptly abolished. Such delays without cause are detrimental to the administration of justice. The matter of a continuance rested in the sound discretion of the trial court. *Griffin v. People* 76 Colo. 422, 231 Pac. 1113. The record discloses no abuse of that discretion.

3. It appears that before the box was exhausted a special venire was issued and six of the jurors so summoned served. If the objection were otherwise good it is disposed of by the fact that the record does not show that defendant used all or any part of his peremptory challenges. He could not in any event object to the service of those jurors unless he was obliged to take them. But we put our ruling once more on the broad ground of a special reservation in the statute, which provides that the court "may issue an open venire as heretofore practiced", and our numerous interpretations of that language and that practice. Section 5843, C. L. 1921; *Inboden v. People,* 40 Colo. 142, 90 Pac. 608. *Mitsunaga v. People,* 54 Colo. 102, 107, 129 Pac. 241. *Lowe v. People,* 76 Colo. 603, 234 Pac. 169.

In the face of these repeated decisions the question is

repeatedly presented. It should be, and we trust now is, finally disposed of. The language of the statute "as heretofore practiced" is equivalent to "in the discretion of the court" and he who objects must show abuse of discretion and prejudice to his rights. None appears here.

4. The record shows an arraignment and plea of not guilty. The transcript shows that counsel for defendant, in answer to the inquiry of the court as to what the plea was, said "Waive formal arraignment and enter a plea of not guilty." It is now contended that this was no arraignment because it does not show that defendant was called to the bar, or that the information was read to him, or that his plea was entered in person, or that a copy of the information was delivered to him, or to any attorney representing him. Plea by counsel is sufficient. Section 7092, C. L. 1921; *Minich v. People,* 8 Colo. 440, 9 Pac. 4.

The record does not show delivery of a copy of the information. This question was not presented by a motion for the new trial and hence is not now entitled to consideration.

"Only questions presented in such motion (for new trial) will be considered on review." Rule 8, Supreme Court of Colorado.

5. Defendant testified in his own behalf. On cross-examination he was asked: "Have you ever been convicted of a crime?" to which an objection was made and overruled and an exception saved; then: Q. "What was it?" (No objection). A. "It was a government charge of bringing liquor in from one state to another."

Q. "You served a term in the federal penitentiary, did you not?" (No objection). A. "Yes sir."

This was simply impeachment by cross-examination as provided by statute: "The conviction of any person for any crime may be shown for the purpose of affecting the credibility of such witness; and the fact of such conviction may be proved like any other fact not of record, either by the witness himself (who shall be compelled to testify

thereto), or by any other person cognizant of such conviction, * * *." Section 6555, C. L. 1921.

Such cross-examination is not limited to the single question but a reasonable latitude is permitted, especially where, as here, the witness equivocates. *Dennison v. People,* 65 Colo. 15, 174 Pac. 595; *Dively v. People,* 74 Colo. 268, 220 Pac. 991. Moreover, no objection was made to the last two questions and answers above quoted, which are the only ones now urged as erroneous.

6. In ruling on the motion for a new trial the court said: "In so far as the evidence is concerned it occurred to my mind that there was sufficient evidence to have justified a verdict either one way or the other."

It is now said this indicates that in the opinion of the trial judge the evidence was insufficient, hence the verdict should have been set aside under the rule announced in *Piel v. People,* 52 Colo. 1, 119 Pac. 687. Counsel's conclusion is without support. The language quoted not only indicates, but expressly states, the opposite. It is clearly a finding by the court that, under the evidence, the jurors were justified in concluding beyond a reasonable doubt that defendant was guilty of second degree murder. In such a case *Piel v. People,* and the authorities there cited have no application, and the court has no right to set aside the verdict because unsupported by the evidence.

7. Before impaneling the jury counsel for defendant said: "May it please the Court, at this time counsel for defense wish to object most strenuously to the appearance of Mr. Hendrick as special prosecutor. * * *. It has been very generally understood in and about Trinidad, and in and about Las Animas County, for the past several weeks, that Mr. Hendrick was going to be hired as a special prosecutor by what is commonly called The Invisible Empire, or The Ku Klux Klan. * * * Counsel for defense knows, as perhaps your honor knows, that deceased, Pearl Brown, left no relatives; and that money had to be raised in order to bury him. Now they appear on the scene with one of our very best attorneys, high

priced attorney, as special prosecutor. We feel that on an occasion of this kind, that the court should thoroughly investigate the matter  *   *   *   that if he has been hired or is in the employ of the Ku Klux Klan, that they should not be. permitted, through the legal profession, to come into the court room and prosecute anybody. I object, and I think the court should find out if our statements are correct, from Mr. Hendrick."

Mr. Hendrick: "I don't care to observe anything in answer to the surmises of Mr. Cooley. I wish he would put his statement in writing and swear to it, then I would certainly like to make an answer to it.  *   *   *."

Mr. Cooley: "I am perfectly willing to make an affidavit to this, may it please the court. I would like the opportunity to."

The Court: "I don't believe I care to hear anything further from either one of you gentlemen. It is the privilege of any citizen, or any association of citizens, no matter who they are, when they believe a law has been violated, to employ counsel to come into court and see that the law is vindicated. I don't know upon what theory you base your objections in this case, or why it was necessary to try to inject this issue into the trial of the case. Your objection will be overruled. Mr. Hendrick will be permitted to serve."

Mr. Cooley: "Kindly note our exception."

Aside from the foregoing the only statement of any reason for the objection to the appearance of John J. Hendrick as special prosecutor is found in assignment No. 6 where it is said the court erred in permitting his appearance over objection when the district attorney was not in any way disqualified or incapacitated. In support of that objection we are cited to that portion of the opinion of Mr. Chief Justice Teller in *LaShar v. People,* 74 Colo. 503, 510, 223 Pac. 59; in which the writer merely sets forth his individual views. Certain other decisions of this court are also cited which do not touch the ques-

tion, but deal solely with the duty of prosecuting attorneys.

We have examined the record with care and find no indication that the district attorney, or the special prosecutor, violated his duties or abused his privileges, or did, or neglected, anything of which this defendant has a right to complain.

There are authorities which support the position that a special prosecutor, privately employed, may not appear over defendant's objection, and in some states the practice is prohibited by statute. But the great weight of authority, and we think of reason, is to the contrary. It has been decided that the public prosecutor must retain control of the case for the people and be held accountable for its conduct; that privately employed counsel may assist him on his request or by his consent; that such request or consent is presumed in the absence of a showing to the contrary; that such assistance, so requested or consented to, as well as the number of assistants, rests in the sound discretion of the trial court; that objection thereto must be made in proper time and manner and be supported by the necessary showing; that in exercising its discretion the trial court should be guided only by the requirements of justice, the enforcement of the law, and the preservation of its guarantees. We so hold. 18 C. J. pp. 1336, 1343, 1344, and cases there cited.

In the instant case the objection, while timely, was insufficient and unsupported, and the support proposed was immaterial. Assuming the correctness of the facts stated by counsel there was no suggestion of any possible prejudice to defendant by reason thereof.

8. Defendant's witness Petitt testified that he knew Pearl Brown, that he saw him at the hospital about 2:30 a. m. March 25, which was approximately eight hours before he died, and there talked with him about the shooting. To a question calling for that conversation people's objection was sustained. Thereupon the following offer was made: "Defense now offers to show by the witness,

Petitt, that on the morning of the 25th of March, 1924, he went into the room in the hospital in which the deceased, Pearl Brown, was placed by the hospital authorities, and there had a conversation with Brown, wherein Brown was asked by Petitt why he had engaged in this altercation that created the trouble there; and that thereupon, Brown stated that he had come all the way from Delagua to Berwind for the sole purpose of shooting John Davis, at that trial. And that at said time Brown had been warned that he was going to die; and that said statement was made by the said Brown with full and complete understanding that he was about to die." The offer was refused and that ruling is assigned as error. Counsel for defendant maintain that this was an offer to show a dying declaration, admissible under all the authorities. The people answer that the offered evidence was not a part of the res gestae, that it was merely Brown's opinion, and that no proper foundation had been laid. We assume it was no part of the res gestae. Certainly it was not the mere opinion of Brown. The purpose for which he came to Berwind was a fact, a fact which might be proved by many circumstances pointing to its existence, but of which Brown alone could give direct and positive evidence, for it was a mental resolution concealed from others in the brain of the man who made it. The attorney general further says it does not appear that Brown stated he was about to die, or that a competent person had so informed him, that the offered evidence was merely cumulative, and that such offers are addressed to the discretion of the court.

The offer was to prove that Brown made the statement *with the understanding* "that he was about to die." If so it was immaterial how he obtained, or how he expressed, that understanding. Deceased's alleged declaration, if upon inquiry the court found the proof as offered, related to a public prosecution for homicide (3 Wigmore on Evidence § 1432), the death in question was declarant's (Id. § 1435), the declaration concerned a fact leading up to

the act resulting in death (Id. § 1434), and it was made in the belief of certain and speedy death (Id. §§ 1440, 1441). Such declarations can not be rejected because there is other evidence, from other sources, of the same fact (Id. § 1435). *Reynolds v. State*, 68 Ala. 502, 506; *Fuqua v. Commonwealth*, 24 Ky. Law Rep. 2204, 73 S. W. 782; *Payne v. State*, 61 Miss. 161, 163; *Donnelly v. State*, 26 N. J. L. 601, 627; *Lyles v. State*, 48 Tex. Cr. 119, 121, 86 S. W. 763, *State v. Moody*, 18 Wash. 165, 51 Pac. 356.

Hence this dying declaration, as offered, conformed to the strictest rules on the subject and the court should either have admitted the testimony of the witness as to its substance or, if not satisfied that it was in fact a dying declaration, have taken evidence on that subject. The issue was momentuous. The offer was sufficient to demand an inquiry into the facts and circumstances under which the declaration was made. If made as offered it was equivalent to a dying declaration that Brown had determined to murder defendant, and had gone to the place where the shooting occurred for that purpose. If true it was most important in aiding the jury, in a case of clear conflict, to decide which was the aggressor and hence correctly weigh defendant's claim of self defense. Where the evidence was so conflicting, the fact so vital, and the necessity for all possible light so urgent, we are obliged to say that the error committed in rejecting this offer was prejudicial.

9 and 10. In view of the foregoing these alleged errors need not be considered.

The judgment is reversed and the cause remanded for a new trial.