No. 16,041.

THISTLE *v.* THE PEOPLE.
(199 P. [2d] 642)

Decided October 18, 1948.   Rehearing Denied November 15, 1948.

1

Messrs. Moynihan-Hughes-Sherman, for plaintiff in error.

Mr. H. Lawrence Hinkley, Attorney General, Mr. Duke W. Dunbar, Deputy, Mr. James S. Henderson, Assistant, for the people.

*In Department.*

MR. CHIEF JUSTICE BURKE delivered the opinion of the court.

PLAINTIFF in error, hereinafter referred to as defendant, was convicted of burglary with intent to rape, and, being but nineteen years of age, was sentenced to the state reformatory. To review that judgment he prosecutes this writ, alleging: 1. The evidence was insufficient; 2. There was prejudicial misconduct of a bailiff; 3. There was prejudicial misconduct of the jury; 4. Four of defendant's tendered instructions were erroneously refused; 5. Instruction No. 6, given, was erroneous; 6. Instruction No. 11, given, was erroneous.

██ 1. Unquestioned evidence established that a young married woman, mother of a small child and whose husband was then absent in Denver, was sleeping soundly in her quonset hut near Grand Junction when, shortly after 11:00 p.m., she discovered a naked man in her bed. She very soon ascertained it was not her husband. The intruder was endeavoring to take liberties with her and she was obliged to use force and the subterfuge of a call to the toilet to temporarily escape. She rushed to a telephone and called a member of her family for help. Thus warned the would be rapist apparently made a hasty exit. All this in the dark. An officer was promptly called and investigations conducted then and the following morning established that the miscreant had carefully inspected the place, removed his clothing, including hat, shoes and necktie, forced a screen over the window and entered, leaving mud tracks from his naked feet on the bedding. Thus the crime charged was established beyond doubt as having been committed by someone. There remains but the question of identity.

Suspicion pointed to defendant, a soldier on furlough, and he was promptly taken into custody. He

testified in his own behalf and admitted ownership of the hat and necktie found outside the window of the hut. His explanation of how they got there is unconvincing in type and evidently the jury did not believe it. When apprehended in bed at the nearby home of his parents and told by the officers to dress in the identical clothing he had worn during the evening he donned shirt and trousers and started to put on dry footwear when his mother reminded him that he had worn others. These, with the telltale mud still clinging to them, were found under the bed and admitted. The socks were found in his pocket. Plaster casts of the footprints of the intruder exactly fitted defendant's shoes. Among numerous smudged finger prints found at the hut one clear set was discovered and identified as those of defendant. Many minor facts also pointed to him as the culprit. This evidence was ample to support the conclusion of the jury that defendant was the man.

2. The alleged prejudicial conduct of the bailiff in charge of the jurors was that when they asked him to report to the judge a failure to agree he replied that they could not report until they had reached a verdict or deliberated for thirty hours. As evidence thereof defendant relies solely upon an affidavit of the foreman. This is flatly denied by the affidavit of the bailiff who says he informed the judge of the request and was told to bring the jurors in, but when he so reported back he was informed by the foreman that the jurors had changed their minds. Passing the propriety of such an attempt by the foreman to impeach the verdict in which he had acquiesced, the matter was clearly one in the discretion of the judge and since he knew what report the bailiff had made to him and what message he had returned, all inconsistent with the affidavit of the foreman, the conclusion is inevitable that his ruling on this question, adverse to defendant, was without prejudice.

3. The foreman and another juror made affidavits that after returning from their evening meal the

juror Mrs. McClarnon produced the current issue of a Grand Junction newspaper reporting on the trial, which report contained false statements and comment derogatory to defendant, and that, "all members of the jury read said article and it was employed in argument for his conviction." The questioned article appears in the record and the only portion of it possibly prejudicial was that, "sheriff E.. E. Redmon has orders from the U. S. army to hold Thistle for AWOL charges in event he is acquitted." McClarnon and two other jurors made counter affidavits, each stating that the article in question, "was not used and quoted in favor of finding a verdict of guilty by any of those members of the jury favoring conviction and so far as this affiant remembers said article or any part thereof was not used in argument in favor of finding a verdict of guilty by any member of the jury." The record before us indicates pretty clearly that the subject of this newspaper article arose in connection with discussion in the jury room of the possible punishment of defendant should the verdict be guilty, a subject entirely without the province of the jury and presumably immaterial if in fact, as we must assume, the jurors obeyed their oath and followed the instructions given them. Aside from the fact that in face of conflicting evidence resolution rested in the discretion of the trial court and that no abuse of discretion is shown, jurors who have taken an oath to return a verdict based solely upon the evidence and instructions are not permitted to impeach their verdict by affidavits that they violated that oath. *Johnson v. People,* 33 Colo. 224, 242, 80 Pac. 133.

4. Defendant tendered his instructions A, B, C, D, and E, all of which were refused and on which refusal error is assigned. C is not argued and A and E relate to counts dismissed with prejudice. These deserve no further notice. B and D are based upon the theory that defendant's intent to commit rape must have been formed before the breaking and entering. So far as cor-

rect we think the proposition is covered by instruction No. 1, which states that the charge is breaking and entering *with intent* to rape, and instruction 11 which tells the jurors that intent is an element of the charge and may be gathered from outward manifestations and acts, etc. Moreover, if anything additional were required it may have been given, and is presumed to have been given, since apparently there were 17 instructions and only numbers 1, 2, 4, 5, 6 and 11 are abstracted. Since all instructions not abstracted are presumed to be correct a like presumption must be indulged that those not abstracted clarified the others if any such clarification were necessary. *Polochio v. People,* 76 Colo. 574, 576, 233 Pac. 833. Again, defendant presented no theory of the case consistent with his requested instructions B and D, and there is no evidence to support them unless we conclude that there is a reasonable doubt as to whether defendant may not have stripped himself and broken into a sleeping woman's room with intent to take a bath, or place a telephone call. The law sometimes permits strange presumptions, but we venture the conclusion that she is not yet so ignorant of human motives, or so blind to their ordinary manifestations, as to excuse such a performance on such a presumption.

5. Error is assigned to the giving of instruction No. 6. It informed the jury that rape, as that term was used in the information, could be accomplished by sexual intercourse with the woman's permission if that permission was secured by the perpetrator fraudulently inducing her to believe that he was her husband, which is rape as defined by paragraph 8, section 58, chapter 48, '35 C.S.A. Counsel assign this as error since the information simply charged burglary with intent to rape, and contend that without further particularization that meant common-law rape as specified by paragraph 3 of section 58, id. The burglary here charged is made so by section 82, chapter 48, '35 C.S.A., which simply provides that the forcible breaking and entering "with in-

tent to commit * * * rape * * * shall be deemed * * * burglary." It was for the Legislature to say what was therein meant by the term rape and no additional detail was essential in the charge. It might as well be contended that if the charge were burglary with intent to commit larceny the people would have to allege whether it was grand or petit. No reasonable basis appears to us for the contention.

6. Error is assigned to the giving of instruction No. 11. Apparently this presents a question already settled here contrary to defendant's position. *Griffin v. People,* 76 Colo. 422, 231 Pac. 1113. However, the people here contend that if there was error in instruction No. 11, considered alone, it was clarified by instruction No. 15, exactly as held in the Griffin case, and since No. 15 here is not abstracted we must indulge the presumption.

Finding no reversible error in the record the judgment is affirmed.

MR. JUSTICE STONE and MR. JUSTICE HAYS concur.