[Criminal No. 731.   Filed June 2, 1931.]

[299 Pac. 682.]

HERBERT YOUNG, Appellant, v. STATE, Respondent.

Mr. Wm. O'Brien Kearns and Mr. James D. Barry, for Appellant.

Mr. K. Berry Peterson, Attorney General, Mr. Renz L. Jennings, Assistant Attorney General, and Mr. Claude Smith, County Attorney, for the State.

LOCKWOOD, J. — Herbert Young, hereinafter called defendant, was informed against by the county attorney of Pima county for the crime of murder in the first degree. The jury returned a verdict of guilty, as charged, and fixed the penalty at death, and, from the order overruling the motion for new trial and the judgment on the verdict, the defendant has appealed. There was practically no conflict in the evidence in the case, and the facts may be stated as follows:

One John Dye, a taxicab driver in Tucson, early on the morning of the 18th of March, 1930, was found a few miles north of Tucson, suffering from many serious wounds, and was taken to a hospital, where he died a few hours later. While in the hospital he made a dying declaration, accusing defendant of assaulting and robbing him. About nine o'clock that morning defendant was arrested and taken to the police station, where he admitted he had attacked and robbed deceased the night before. There was found in his possession a wallet which was identified as belonging to the deceased, and there were blood stains on his arms and clothing. It was also shown that defendant was then without work, and in immediate need of funds, and that on the morning of the 17th he had seen deceased with a considerable sum of money in his possession. The only evidence offered for the defense was a showing of the previous good character of defendant, and the testimony of the latter to the effect that he had no knowledge or recollection of what happened the night Dye was killed. His whole testimony upon the stand shows clearly that his only defense was that of insanity. There was no possible excuse under the evidence for any other verdict than murder in the first degree, unless the jury had believed defendant's plea of insanity, and by their verdict they evidently did not accept this.

There are but three assignments of error, and we discuss them in their order. The first is that the court erred in permitting the county attorney, over the objection of the defendant, to ask of prospective jurors, some of whom actually sat in the trial of the case, the following question, or one of like tenor:

"If, after hearing all of the evidence, and the instructions of the court as to the law, you were firmly convinced beyond every reasonable doubt that the de-

fendant was guilty, do you at this time know of any reason why you could, or would not vote in favor of the infliction of the death penalty?"

It is urged on behalf of defendant that the question required the juror to surrender his statutory discretion to choose between the death penalty and life imprisonment—in other words, that he was required to say that, if he was convinced beyond a reasonable doubt that the defendant was guilty of murder, he would in all cases inflict the death penalty. In support of the contention that it was error to allow this question, counsel for defendant has cited the cases of *Stroud* v. *United States*, 251 U. S. 380, 64 L. Ed. 317, 40 Sup. Ct. Rep. 176, and *Fernandez* v. *State*, 82 Tex. Cr. 129, 198 S. W. 301.

Neither of these cases seems to bear upon the issue. In the first cited, it appears from the opinion that the court refused to sustain the challenge of defendant to a certain juror because the juror said that, in the event of a conviction of murder in the first degree, he would return only a verdict which required capital punishment. The case in no manner discusses whether or not it was error to allow the juror to be *questioned* in regard to his views on this subject, nor, indeed, what questions were asked him. The most we can take the case as authority for, and this is stretching its language to the uttermost, is that, if a juror is challenged on the ground that he believes capital punishment should be inflicted in all cases of first degree murder, it might be erroneous to disallow a challenge. The case of *Fernandez* v. *State* merely holds that it is error to deny a challenge on the ground that the juror has stated positively that he would not under any circumstances accord the accused the benefit of the suspended sentence law. It appears that it is the right of the jury in Texas to pass upon the question of whether a suspended sentence should be

granted. The matters determined in these two cases, in our opinion, present no similarity whatever to those in the present case.

The law of Arizona provides that a person who has a conscientious scruple against capital punishment shall be neither required nor permitted to sit as a juror in cases where the death penalty may be inflicted. Section 5035, subd. 14, Rev. Code 1928. The examination of the jurors on their *voir dire* is reported in full in the reporter's transcript, and it appears therefrom that, upon the first objection being made to a question of this nature, the following colloquy between counsel for defendant, the county attorney, and the court occurred:

"Mr. Barry: Your Honor, just a moment. That does not take into account other facts and circumstances in the case, your Honor. In other words, if he is guilty of murder he must inflict the death penalty is the sequence.

"Mr. Smith: No, no, not at all.

"The Court: I don't so understand it.

"Mr. Barry: That is the way I understand it.

"Mr. Smith: No, if he was convinced to that degree under the instructions of the court, does he know at this time of any reason why he could not vote in favor of the infliction of the death penalty.

"The Court: All right, answer the question."

This conversation was held in the presence of the jury panel, and, taking the question as asked and the statements of the court and the county attorney, no man of ordinary intelligence could imagine that a negative answer to such a question was a promise or even an indication that in all cases of murder in the first degree he would vote in favor of capital punishment. Its effect would be merely to establish that he had no conscientious scruples against capital punishment as such. We are of the opinion that the question asked was clearly a proper one under the statute.

*De Arman* v. *State,* 80 Tex. Cr. 147, 189 S. W. 145; *State* v. *Williams,* 309 Mo. 155, 274 S. W. 427; *State* v. *Dreher,* 166 La. 924, 118 South. 85; *State* v. *Milosovich,* 42 Nev. 263, 175 Pac. 139.

The second assignment of error is that the court improperly asked of one of the jurors a certain question, the effect of which can be better understood by quoting also the questions immediately preceding the one objected to.

"Q. Mr. Thayer, do you have any conscientious scruples against the infliction of the death penalty? A. No sir.

"Q. Do you belong to any religious or fraternal organization which has for a part of its teachings anything opposing the infliction of the death penalty? A. No sir.

"Q. If selected as a juror in the trial of this case, and if after hearing all of the instructions of the court and the testimony of the witnesses you were convinced beyond every reasonable doubt that the defendant was guilty of the crime of murder, do you know of any reason why, after all of that, you would not or could not vote for the infliction of the death penalty?

"Mr. Barry: I object to that question again, if your Honor please. I want to put the objection on the record.

"The Court: Q. Do you know of any reason at this time, Mr. Thayer? Do you know of any reason at this time why you would not vote for the infliction of the death penalty?"

It will be noted that the question of the court shows clearly that the query was to emphasize that the purpose of the previous question was to determine the state of mind of the juror at the time of his examination, and not as to how he might vote after he had heard the testimony. That this was the purpose of the question is further shown by the examination of the next juror, where the court, in response to an objection to a similar question, stated in substance

that the objection would be sustained, unless it was confined to the frame of mind of the juror at the time of his examination, and not to what he might determine after the evidence in the case was presented to him. In support of his objection counsel for defendant cites the case of *State* v. *Thorne*, 41 Utah 414, 126 Pac. 286, and the note thereto found in Ann. Cas. 1915D 90.

We have examined the principal case cited most carefully, and are of the opinion that, instead of supporting the doctrine advanced by counsel for defendant, it rather repudiates it. In that case a juror stated that he was of the opinion that all murder committed in the perpetration of robbery should be punished with death. Under the law in Utah, the penalty for murder in the first degree was death, unless the court in its discretion should follow a recommendation to show leniency made by the jury. The effect of the juror's answer was that under no circumstances would he recommend leniency in the case of murder committed in perpetration of robbery, and the court held that, not only the question was proper, but that the court had no right to excuse a juror for cause on the ground of an attitude of the nature stated. We find no case in the note which holds that a question such as the one objected to in this case was improper. All of the cases referred to apparently discuss the effect of a denial of a challenge based on an opinion expressed by a juror.

We are of the opinion that both questions objected to were entirely proper for the purpose of determining the state of mind of the juror in regard to capital punishment, a necessary matter under the provisions of our Code when the indictment is for murder in the first degree, and that further, even had such questions developed a state of mind on the part of the juror which would indicate he was not impartial, defendant

could not predicate error on the *question*, but must have raised the matter by a challenge of the juror. The purpose of the examination of jurors on their *voir dire* is to determine the real state of their minds, so that a jury may be chosen which will fairly and impartially try all the issues which arise between defendant and the state. *People* v. *Redola*, 300 Ill. 392, 133 N. E. 292. Such being the case, it is rarely, if ever, that the allowance of a question is reversible error, though the refusal to permit one to be asked may sometimes be. If either the state or the defendant believes that a juror is not fair and impartial, a challenge must be interposed to him before any error can be predicated upon the fact that he sat in the case. *Riley* v. *Southern Pacific Co. et al.*, 57 Cal. App. 477, 207 Pac. 699; *People* v. *Sanford*, 43 Cal. 29; 35 C. J. 364.

The third assignment of error is that the court improperly admitted in evidence certain photographs of the head and neck of deceased taken shortly after his death. The objection is based on the theory that they did not show the true condition of the head at or shortly after the time the wounds thereon were inflicted, and that they were calculated to arouse the passion and prejudice of the jury. It was part of the theory of the state that the death of deceased was caused by certain wounds inflicted upon his head and neck with a wrench and a razor, which were found near the scene of the assault. The wrench was connected by the evidence with defendant, though the testimony regarding the razor was not so satisfactory. It would, of course, have been entirely proper for the jury to have examined the head of deceased, had it been possible to do so, to determine whether or not it was probable the injuries had been inflicted with the wrench. Such being the case, photographs of his head, if they showed the true condition of the wounds,

were equally admissible. *People* v. *Rogers,* 163 Cal. 476, 126 Pac. 143; *State* v. *Miller,* 43 Or. 325, 74 Pac. 658.

The doctor who attended deceased before he died, and who was present when the photographs were taken, stated that in an effort to save the life of deceased he had shaved his head, sewed up the wounds, and treated them with mercurochrome to avoid infection. When the photographs were taken, he took the stitches out of the wounds so they would be in the same condition they were before treatment was administered, but could not restore the hair nor remove the marks of the mercurochrome. The only effect of the latter, according to his testimony, was to redden the flesh and skin, and it did not in any manner otherwise change the tissues. The purpose of the rule requiring that photographs which are offered in an attempt to show the condition of an object which cannot be examined physically by the jury must show the object as it existed at the time to which the evidence is directed is that the jury shall not be misled into believing that certain conditions did or did not exist when the facts were otherwise. *State* v. *Kelley,* 46 S. C. 55, 24 S. E. 60. The changes in question could in no manner have misled the jury in determining whether or not the wounds were in all probability inflicted by the wrench and the razor which were admitted in evidence.

The fact that the ghastly appearance of the wounds, even though such appearance was heightened by the shaving of the head and the use of mercurochrome, so long as it did not tend to deceive the jury as to the real issue in regard to which the photographs were admitted, did not make them inadmissible merely because such appearance might have a tendency to arouse passion and resentment against defendant in the minds of the jurors. *Janovich* v. *State,* 32 Ariz.

175, 256 Pac. 359. We are of the opinion the photographs were properly admitted in evidence.

This disposes of all the assignments of error. Nevertheless, in view of the fact that this is a capital case, we have carefully read the entire transcript of the evidence and examined the judgment-roll. It appears to us that the record is singularly free from error; certainly, nothing of a legally prejudicial nature can be found therein. The only conclusion which can be drawn from the entire record is that defendant committed a first degree murder while engaged in the robbery of his victim, and no extenuating circumstances of any nature are shown. Such being the case, we have no option but to affirm the verdict and judgment of the trial court. It is so ordered.

McALISTER, C. J., and ROSS, J., concur.