UNITED STATES of America

v.

Philip J. HOWELL, a/k/a James
Colburne Howard, Appellant.

No. 11948.

United States Court of Appeals
Third Circuit.

Submitted Nov. 6, 1956.

Decided Dec. 28, 1956.

See also 138 F.Supp. 376.

Phillip J. Howell, pro se.

W. Wilson White, Philadelphia, Pa., for appellee.

Before MARIS and KALODNER, Circuit Judges, and WORTENDYKE, District Judge.

WORTENDYKE, District Judge.

Appellant was convicted on April 5, 1956 upon Counts 1, 3, 4, 6, 7 and 9 of a nine-count indictment returned by the Federal Grand Jury for the Eastern District of Pennsylvania, for bank robbery on October 10, 1955, in violation of 18 U.S.C.A. § 2113. He was acquitted (on motion) on Counts 2, 5 and 8. More particularly, Count 1 of the indictment charged that the defendant by force and violence unlawfully took from the presence of certain therein named individuals the sum of $19,777.00 lawful currency of the United States belonging to and in the care, custody, control, management and possession of Wayne Title and Trust Company, Strafford Branch, whose deposits are insured by the Federal Deposit Insurance Corporation.

On April 16, 1956, following denial of defendant's motion for new trial, he was sentenced to imprisonment for ten years on each of Counts 1 and 3 of the indictment, to run consecutively, and to imprisonment for ten years on each of Counts 4, 6, 7 and 9, to run concurrently with each other and with the sentence imposed upon his conviction on Count 3. Defendant elected to commence service of his sentence pending his appeal.

Although represented by counsel upon the trial, defendant appears pro se on this appeal, which, pursuant to leave granted he submits upon a handwritten brief without appendix, in lieu of which we refer to the original record. The case has been considered upon the record and briefs as filed.

On November 16, 1955 an indictment was returned against James Colburne Howard and two others who had been identified as the three men who committed the bank robbery. The present appellant was arrested on January 13, 1956

in Baltimore, Maryland, and upon being searched at the time of his arrest a safe deposit key was found concealed between the lining and a pocket of his trousers. He was identified as a savings account depositor of Aurora Federal Savings and Loan Society of Baltimore, Maryland, and the lessee (under the name of Joseph Nash) of a safe deposit box in that institution to which the key gave access. Appellant says that after his arrest he was taken to the local office of the Federal Bureau of Investigation and from there was brought before a United States Commissioner in Baltimore, who, after a partial hearing, continued the same to January 16, 1956, fixing bail at $15,000 and remanded the accused to jail. Meanwhile, upon a search warrant obtained from the Chief Judge of the United States District Court for the District of Maryland, a search was made of the safe deposit box above mentioned, and therein were found two packages of currency totalling $3,400. and a savings account pass book showing deposits of $2,000. One package, labelled "Joseph Nash, No. 1, $2,200.00H." was found to contain 150 $10 bills, 25 $20 bills, 3 $50 bills, 2 $20 bills and 1 $10 bill (aggregating $2,200). The other package, labelled "Joseph Nash, H-W $1,200.00—5's", was found to contain 240 $5 bills (aggregating $1,-200). Appellant admits that he was the lessee of the safe deposit box under the name "Joseph Nash". When the Strafford (Pennsylvania) branch of the robbed Trust Company was first opened it was in possession of two packages of $5. bills; each package aggregating $500. The branch manager had made a list of the serial numbers of the bills in these packages, and these numbers were set forth in the search warrant as descriptive of some of the property to be seized. Ninety-two of the $5. bills seized bore serial numbers included in this list—an aggregate of $460 out of the $1,200 of $5. bills seized, all intermingled in one of the packages found in the safe-deposit box. There were also found in the safe deposit box 151 $10. bills 98 of which were crisp, new bills and bore consecutive

serial numbers indicating that they had been placed in circulation by the Federal Reserve Bank at Philadelphia after September 2, 1955. There was also found in the box a $5. bill which bore a handwritten numeral which had been placed thereon prior to the robbery by the teller at the Wayne Title and Trust Company's office where it occurred.

On January 23, 1956, appellant filed in the United States District Court for the District of Maryland a petition for a writ of habeas corpus and for the return and suppression of evidence obtained by the Government agents from the safe deposit box. These petitions were denied without prejudice.

Because appellant had insisted that he was not the James Colburne Howard named in the indictment of November 16, 1955, but that his true name was Philip J. Howell, he was reindicted in the Eastern District of Pennsylvania on January 26, 1956, under his asserted true name. Upon his motion for suppression of evidence and return of property in that District, the return of the savings account book which had been taken from the safe deposit box was ordered, but the motion was denied in all other respects.

Appellant was arraigned and pleaded not guilty on March 24, 1956 and was brought to trial on April 2, 1956; being convicted as hereinabove stated.

Appellant assigns eight grounds for reversal of the convictions appealed from; these will be considered in order, as follows.

Appellant asserts that the indictment upon which he was tried failed to set forth a violation of the Code Section therein cited. The first count of the indictment against this appellant was couched in the following language:

"That on or about October 10, 1955, at Strafford, in the Eastern District of Pennsylvania, Philip J. Howell a/k/a James Colburne Howard did knowingly and unlawfully by force and violence take from the presence of J. Harold Hallman and Mildred Mellin a sum of money, to

wit: $19,777.00 lawful currency of the United States belonging to and in the care, custody, control, management and possession of the Wayne Title and Trust Company, Strafford Branch, whose deposits are insured by the Federal Deposit Insurance Corporation; in violation of Title 18 U.S.C., Section 2113."

Appellant moved to dismiss the indictment below, and argues for reversal here, on the ground that the foregoing language (which is similar to that used in Counts 3, 4, 6, 7 and 9 of the indictment) did not charge that the Wayne Title and Trust Company was a "bank" as used in the section alleged to have been violated. The relevant provisions of that section (as set forth in Title 18 of the United States Code Annotated) read as follows:

"§ 2113. Bank robbery and incidental crimes.

"(a) Whoever, by force and violence, or by intimidation, takes, or attempts to take, from the person or presence of another any property or money or any other thing of value belonging to, or in the care, custody, control, management, or possession of, any bank, or any savings and loan association; * * * shall be fined not more than $5,000 or imprisoned not more than 20 years, or both.

* * * * *

"(f) As used in this section the term 'bank' means any member bank of the Federal Reserve System, and any bank, banking association, trust company, savings bank, or other banking institution organized or operated under the laws of the United States, and any bank the deposits of which are insured by the Federal Deposit Insurance Corporation. * * "

■■■ While subsection (a) of the foregoing section of Title 18 refers only to a bank or savings and loan association, subsection (f) of the same section defines the term "bank" as (1) any member bank of the Federal Reserve System, (2) any bank or trust company organized under the laws of the United States, and (3)

any bank the deposits of which are insured by the Federal Deposit Insurance Corporation. While the language of the indictment does not use the word "bank", it names the institution in and from which the robbery is alleged to have been committed and also charges that the deposits of that institution are insured by the Federal Deposit Insurance Corporation. Rule 7(c) of the Federal Rules of Criminal Procedure, 18 U.S.C.A., provides as follows:

"(c) Nature and Contents. The indictment or the information shall be a plain, concise and definite written statement of the essential facts constituting the offense charged. It shall be signed by the attorney for the government. It need not contain a formal commencement, a formal conclusion or any other matter not necessary to such statement. * * * The indictment or information shall state for each count the official or customary citation of the statute, rule, regulation or other provision of law which the defendant is alleged therein to have violated. Error in the citation or its omission shall not be ground for dismissal of the indictment or information or for reversal of a conviction if the error or omission did not mislead the defendant to his prejudice."

An indictment is sustainable if the "offense be described with sufficient clearness to show a violation of law, and to enable the accused to know the nature and cause of the accusation and to plead the judgment, if one be rendered, in bar of further prosecution for the same offense." United States v. Behrman, 258 U.S. 280, 288, 42 S.Ct. 303, 304, 66 L.Ed. 619. Where the indictment charges a statutory offense its allegations need not be in the words of the statute, provided they set forth facts constituting the elements of the offense. United States v. Marcus, 3 Cir., 1948, 166 F.2d 497.

Summarized, the indictment charged that on a specific date in a specific municipality the accused, knowingly and in violation of a definitely cited statutory

section, by force and violence took from the presence of specific individuals a specified sum of money in currency belonging to and in the possession of a specified trust company whose deposits were insured by the Federal Deposit Insurance Corporation. The statutory language of the cited section contemplates robbery of a bank. The term "bank" is defined in subsection (f) of the statutory section. It does not appear in the indictment whether the institution which was robbed was a member of the Federal Reserve System, but it does appear therein that the institution's deposits are insured by the Federal Deposit Insurance Corporation. If the institution were a trust company organized and operating under the laws of the United States, it would be a "bank" within the contemplation of the definition set forth in subsection (f). Exhibit G–1 which was offered in evidence indicated that the trust company in question was provided with maximum deposit insurance of $10,000.00 by the Federal Deposit Insurance Corporation. The Federal Deposit Insurance Corporation was created by Section 1811 of Title 12 of the United States Code Annotated. By Section 1814 of the same Title, every operating State or national member bank was made an insured bank and subject to the provisions of the section. Section 1813(a) defined the term "State bank" as "any bank, banking association, trust company, savings bank, or other banking institution which is engaged in the business of receiving deposits * * *." Subsection (h) of Section 1813 of Title 12 defines "insured bank" as "any bank the deposits of which are insured in accordance with the provisions of this chapter; * * *" and a further subdivision (m) of the same section (1813) defines "insured deposit" as "the net amount due to any depositor for deposits in an insured bank (after deducting offsets) less any part thereof which is in excess of $10,000. * * *." Trust companies in Pennsylvania are empowered to engage in banking business. 7 P.S. (Penna.) 819–1 et seq. The receipt of deposits is banking business, and con-

stitutes the institution a bank. Rosenblum v. Anglim, 9 Cir., 1943, 135 F.2d 512, 513.

 We feel that the language of the indictment contained the elements of the offense intended to be charged and sufficiently apprised the defendant of what he must be prepared to meet to such an extent as to enable him to plead a former acquittal or conviction of that offense in future proceedings. Hagner v. United States, 285 U.S. 427, 52 S.Ct. 417, 76 L. Ed. 861. In sum, the indictment charged the defendant with having robbed a Pennsylvania trust company whose deposits were insured by the Federal Deposit Insurance Corporation, which adequately identifies the victim as a "bank". We, therefore, consider the indictment sufficient and find no error in the trial Court's denial of the appellant's motion to dismiss the same.

Appellant assigns as error certain alleged impropriety in the proceedings before the United States Commissioner. The warrant for appellant's arrest was issued upon a complaint of a special agent of the Federal Bureau of Investigation and named the appellant as James Colburne Howard, with aliases Philip J. Howell, Hugh Clay Cameron and Iron Jaw. While this warrant was not in the possession of the arresting officers when appellant was apprehended on January 13, 1956, it was still outstanding and effective. Rule 4(c) (3) (all rules hereinafter cited will be found in Title 18 U.S. C.A.) provides that the arresting officer need not have the warrant in his possession at the time of the arrest but, upon request, shall show the warrant to the defendant as soon as possible. If the arresting officer does not have the warrant in his possession at the time of the arrest, he is required to inform the defendant of the offense charged and of the fact that a warrant has been issued. The Government's brief states that appellant was informed when apprehended that he was being arrested for bank robbery. Appellant's own brief confirms this fact.

 Appellant also states that he was taken before the United States Com-

missioner in Baltimore on the day of his arrest, but he complains that between his apprehension and arrival before the Commissioner he was taken to the local office of the Federal Bureau of Investigation. It appears that the arrest took place at 1:10 p. m.; that the appellant was taken to the Federal Bureau of Investigation office where he arrived at 1:40 p. m.; that thereupon efforts were made to contact the United States Commissioner; that the latter was finally reached by telephone at 3:30 p. m.; and that a hearing was held before the Commissioner from 4:15 to 4:30 p. m. on the same day (Friday). This hearing was continued to January 16, 1956 (the following Monday) when appellant was advised of his rights by the Commissioner, waived hearing, was held in $15,000. bail, and ordered removed to the Eastern District of Pennsylvania, where the indictment against him was pending. We do not find that there was any unnecessary delay in bringing the appellant before the United States Commissioner, nor any impropriety in the continuance of the hearing by the Commissioner from Friday afternoon to Monday, under the circumstances. There was, therefore, a substantial compliance with the provisions of Rule 5(a) and (b). Appellant does not charge that he was deprived of a reasonable time and opportunity to consult counsel, although he claims that he told the Commissioner, on the 13th, that he had not yet engaged counsel. He does not disclose whether he made any effort between Friday and Monday to secure the services of an attorney, nor does he base his criticism of the continued hearing on Monday upon any interference with his right to representation by counsel. The Commissioner, in accordance with Rule 5(c), properly held appellant in bail to answer to the District Court for the Eastern District of Pennsylvania in which the indictment was pending, as provided in Rule 40(a). The proceedings preliminary to trial, therefore, were not improper.

Appellant next complains that some of the currency obtained by the Government agents from his safe deposit box was illegally seized and improperly admitted in evidence on the trial of his case. Appellant twice raised the question of the propriety of the seizure of this currency in advance of trial, first by motion for the return and suppression of evidence in the District Court for the District of Maryland (which motion was denied without prejudice), and later in the form of a similar motion in the District Court for the Eastern District of Pennsylvania, which denied the motion as to all items except appellant's savings account pass book.

The motions referred to were apparently brought under Rule 41(e), which directs that such a motion be made before trial or hearing unless opportunity therefor did not exist or the defendant was not aware of the grounds for the motion; provided, however, that the Court, in its discretion, may entertain the motion at the trial or hearing. As has been already indicated, the search complained of was made pursuant to a search warrant, which described the probable contents of the same deposit box to be searched as follows: (1) a number of $5.00 bills bearing specified serial numbers, (2) an undetermined number of $2.00 bills bearing specified notations upon the faces thereof, (3) an undetermined number of $100.00 bills, one of which bore a pencilled notation thereon, (4) an undetermined number of $10.00 bills, one of which bore a pencilled marking thereon and was mutilated, (5) an undetermined number of $1.00 bills, one of which bore a marking in the upper left hand corner. The return of execution of the search warrant inventoried two packages and a savings pass book as found in the safe deposit box. Each of these packages bore the name "Joseph Nash", the name under which appellant had leased the box. The first package contained currency, bills of various denominations, aggregating $2,200 in amount, and the second package contained 240 $5.00 bills aggregating $1,200. In these packages were found bills specified in the warrant which the evidence tended to identify as

having been stolen from the Trust Company and which were mingled with other bills not so identified, but which, under the evidence, the jury might justifiably conclude were the proceeds of the robbery.

We find no prejudicial abuse of discretion in the denial of appellant's motions for the return of any of the currency seized upon the search of the safe deposit box. Our conclusion is based upon the fact that bills certified as among those stolen from the bank were intermingled with other currency in the same box. The other currency may have been stolen in the commission of the same offense but not have been susceptible of identification because of the absence of a record of serial numbers or other identifying features. Since some of the currency seized under the warrant constituted part of the loot derived from the robbery, we cannot reasonably infer that the admission in evidence of other currency found in the same safe deposit box, indeed even in the same package, with those items which were established as part of the stolen money, could have prejudiced appellant's rights. United States v. Klapholz, D.C.S.D.N.Y.1955, 17 F.R.D. 18, affirmed 2 Cir., 230 F.2d 494, certiorari denied 351 U.S. 924, 76 S.Ct. 781. The Fourth Amendment to the United States Constitution forbids only unreasonable searches and seizures. There is nothing before us to indicate that the search and seizure here complained of was effected without a lawfully issued warrant or in an unlawful manner. We, therefore, find no invasion of the Constitutional immunity in the execution of the search warrant or in the seizure of all of the United States currency contained in the safe deposit box. Appellant has not shown that the admission in evidence of the currency seized under the search warrant constituted error or prejudiced him before the trial jury.

We glean from appellant's brief that a further ground upon which he seeks a reversal of his conviction is the denial by the trial Court of his motion for severance of his trial from that of John Julian Andrews, who was jointly indicted with appellant (under the name of James Colburne Howard) and one John Joseph Carroll. It appears that Carroll had been apprehended, tried and convicted before the present appellant had been returned to the Eastern District of Pennsylvania, and that Andrews had been returned to the District after the trial of Carroll had commenced. It will be recalled that because appellant had contended in the District of Maryland that his true name was not that stated in the indictment (James Colburne Howard), but was Philip J. Howell, a superseding indictment was returned (in the Eastern District of Pennsylvania) against Philip J. Howell, also known as James Colburne Howard, in order to avoid a plea in abatement for misnomer, in view of the teaching of this Court in United States v. Fawcett, 3 Cir., 1940, 115 F.2d 764. This superseding indictment charged appellant with the same offenses as set forth against him in the initial joint indictment. The procedure followed by the trial Court with respect to the two indictments in which the present appellant is named conforms with the provisions of Rule 13 of the Federal Rules of Criminal Procedure, which authorizes the Court to order two or more indictments to be tried together "if the offenses, and the defendants if there is more than one, could have been joined in a single indictment * * *." The Rule further provides that in such case the procedure shall be the same as if the prosecution were under such single indictment. It will be recalled that both appellant and Andrews (together with Carroll) were joined in the original indictment; while appellant alone was named in the superseding indictment. All of the accused were charged with having participated in the same offense. The action of the trial Court in denying the motion for severance was fully justified by the provisions of Rule 13.

The confession which Andrews is alleged to have made did not, as will hereinafter be pointed out, constitute evidence against the appellant, and, therefore, affords no reason for a separate

trial of each. The situation which confronted the learned trial Judge on the motion for severance is suggestive of that which is described in Opper v. United States, 1954, 348 U.S. 84, at page 95, 75 S.Ct. 158, at page 165, 99 L.Ed. 101, as follows:

"It was within the sound discretion of the trial judge as to whether the defendants should be tried together or severally and there is nothing in the record to indicate an abuse of such discretion when petitioner's motion for severance was overruled. The trial judge here made clear and repeated admonitions to the jury at appropriate times that Hollifield's incriminatory statements were not to be considered in establishing the guilt of the petitioner."

Appellant charges that Andrews was insane and was of a weak character. Andrews had been confined in a hospital for the insane from 1942 to 1947. That fact was not urged by appellant upon his motion for severance. It was not shown that appellant was not accorded a fair trial by reason of the refusal of the trial Court to sever the trial of Andrews. We find no abuse of discretion on the part of the learned trial Judge in denying the motion.

■■■■■■ Appellant next charges error upon the trial Court's overruling of his objections to references on cross-examination to his prior conviction and incarceration. The records indicate that appellant was asked whether he had ever been confined in the Western State Penitentiary. He answered that in the affirmative and his attorney's tardy objection was overruled. The cross-examination immediately preceding and following this ruling had to do with the financial resources of the appellant which, of course, were relevant to the critical issue regarding the source of the contents of his safe deposit box and balance in his savings account. Appellant testified that he had been released from the Penitentiary in July of 1955 and then commenced working for the Salvation Army. Appellant testified at some length respecting his various activities which constituted the means and involved the sources of pecuniary acquisitions. He was also interrogated respecting the .45 caliber automatic pistol which was found among his possessions; and the circumstances under which he was surgically treated by Dr. Johnson, a plastic surgeon who testified for the Government. In describing the facial conditions which he claimed required surgical intervention, appellant testified that they resulted from a police beating which he received in Pittsburgh in 1939 and referred his cross-interrogator to the record in the United States Supreme Court in the case in connection with which appellant claimed the beating was administered. Appellant refers in this connection to what apparently is the report of the denial by the Supreme Court of certiorari in the case of Howard v. Claudy, 347 U.S. 993, 74 S.Ct. 858, 98 L.Ed. 1126. The case cited by appellant, the facts of which appear in Com. ex rel. Howard v. Claudy, 172 Pa.Super. 574, 93 A.2d 906 and 175 Pa.Super. 1, 102 A.2d 486, involved a prior conviction of appellant in a court of the Commonwealth of Pennsylvania for armed robbery, which appellant apparently had attempted to have reviewed by the Supreme Court of the United States on certiorari. As the Government points out at page 18 of its brief, reference to this prior conviction was on cross-examination of appellant and was for three purposes, viz.: First, to show that appellant had been convicted under the name of James Howard, in view of his persistent assertion that he was not the person so named in the warrant of arrest and indictments; second, as a foundation for evidence tending to show that because appellant had been incarcerated from 1939 to July 1955, he would be unlikely to have lawfully accumulated the sums of money found in his safe deposit box and evidenced by his deposit book; and thirdly, for the purpose of impeaching his credibility. The subject of this cross-examination was admissible for the purposes stated by the Government, especially in view of the record of prior conviction, Exhibit G–11. As

this Court said in Weiner v. United States, 3 Cir., 1927, 20 F.2d 522, at page 523:

"* * * when the defendant takes the stand in his own defense, he offers himself as a witness and, like all witnesses, submits himself to attack as to his credibility. For this purpose alone he may be asked, and be compelled to answer, questions as to the fact of previous convictions."

Vid. et United States v. Empire Packing Co., 7 Cir., 1949, 174 F.2d 16, 20. Also, in Hansbrough v. United States, 1946, 156 F.2d 327, the Court of Appeals for the Eighth Circuit stated at page 329:

"* * * the sudden unexplained acquisition of wealth by an impecunious person at or about the time of a theft which he had an opportunity to commit, is competent evidence of guilt and will support his conviction."

We find the fact of this appellant's prior conviction and of the incarceration which followed it matter both relevant and competent for the purposes offered. There was, therefore, no error in the ruling of the trial Court which permitted its admission.

We next reach the contention of appellant that the trial Court abused its discretion in denying appellant's motion for a mistrial after it had been discovered that some of the members of the trial jury had read articles in a newspaper or newspapers allegedly reporting incorrectly some of the testimony during the trial. More specifically, appellant refers to an article in an issue of the Philadelphia Inquirer of April 3, 1956, titled "Plastic Surgeon Changed Face of Holdup Suspect." This article referred to the testimony of a witness, Johnson, on April 2, 1956, that he was a plastic surgeon, that he knew the appellant under a different name, and further, that on December 7, 1955, he "did an exploration of his (appellant's) face" which changed appellant's features in some degree by reducing the bulk of his cheek. We entirely agree with what was apparently the view of the learned trial Judge that the criti-cized newspaper report was substantially accurate and its publication non-prejudicial. Appellant, however, also complains of another article which appeared in the issue of April 4, 1956 of the same newspaper, which purported to embody a résumé of the testimony of a Government witness on the trial respecting the contents of a claimed oral confession of the codefendant Andrews. The newspaper account, however, varied to some degree from the testimony of the Government witness as given. The article stated that Andrews told the Government Agent that he and the appellant here had studied the bank from a diner across the street while engaged in a painting job. As the Government admits in its brief, the testimony of the witness referred to in the newspaper article at no time mentioned appellant's name.

The trial Court's instructions to disregard the newspaper article were given amply and emphatically, not only at the time of the motion for mistrial, but also in the Court's main charge at the end of the case. It is elementary that a motion to withdraw a juror upon the grounds urged in this case involves the exercise of the trial Court's sound discretion. Marrin v. United States, 3 Cir., 1909, 167 F. 951. Because we are persuaded, upon the record of the case below, that there was no probable prejudice to the appellant's case, and because we believe that the learned trial Judge carefully and thoroughly eliminated all possibility of any prejudicial effect upon the minds of the jurors which may have resulted from the admitted fact that six of the jurors had read the newspaper article in question, we find no abuse of discretion in the denial of the motion to withdraw a juror. Cf. United States v. Pisano, 7 Cir., 1951, 193 F.2d 355; 21 A.L.R.2d 409.

Appellant next contends that the alleged confession of a stranger to the indictment constituted newly discovered evidence warranting the granting of a new trial. A special agent of the Federal Bureau of Investigation, called as a witness for the defendant, denied hav-

ing any knowledge that three men other than those named in the trial indictment had confessed to the crime therein charged. Appellant asserts in his "Supplementary Brief" that this denial of knowledge on the part of the witness was false. Whether or not the witness testified falsely, it is obvious from the question which elicited the denial of knowledge that the appellant knew or believed that such a confession had been made. Therefore, the fact, if it is a fact, must have been known or suspected by appellant at the time he put the question. If appellant had such knowledge at the time of the trial, it could not now constitute newly discovered evidence. There is nothing before us to show that appellant could not have offered evidence on the trial nullifying the witness' denial of knowledge by tending to prove the fact of the alleged confession. As pointed out by this Court in United States v. Willis, 3 Cir., 1955, 217 F.2d 941, "The criteria for granting a new trial on the basis of newly discovered evidence are set out in Johnson v. United States, 8 Cir., 1929, 32 F.2d 127" and "met the approval of this Court in United States v. Rutkin, 3 Cir., 1953, 208 F.2d 647." These criteria are set forth in the Johnson case, 32 F.2d at page 130, as follows:

"There must ordinarily be present and concur five verities, to wit: (a) the evidence must be in fact, newly discovered, i. e., discovered since the trial; (b) facts must be alleged from which the court may infer diligence on the part of the movant; (c) the evidence relied on, must not be merely cumulative or impeaching; (d) it must be material to the issues involved; and (e) it must be such, and of such nature, as that, on a new trial, the newly discovered evidence would probably produce an acquittal."

There is nothing before us to indicate the concurrence in this case of the foregoing five essentials. We find no error, therefore, in the denial of the motion for a new trial.

As his final ground for reversal appellant charges that he was brought before the trial jury handcuffed. Again we have only the assertion of the appellant in this regard against the emphatic denial of the Government that such an occurrence took place. At page 25 of the Government's brief we read that "From the time the selection of the jury began in Room 3082 on April 2, 1956 until the jury was discharged after the verdict on April 5, 1956, at no time was the Appellant handcuffed in the presence of the jury." We must accept that statement in the absence of anything in the record to the contrary.

The judgment of the District Court will be affirmed.