428 P.2d 91

The STATE of Arizona, Appellee,

v.

Donald CHAMBERS, Appellant.

No. 1665.

Supreme Court of Arizona.

In Division.

May 24, 1967.

---

Darrell F. Smith, Atty. Gen., by Anthony H. Mason, Asst. Atty. Gen., for appellee.

Gerald A. Machmer, by Stan A. Lehman, Phoenix, for appellant.

McFARLAND, Justice.

Donald Chambers, hereinafter referred to as defendant, was tried and convicted of assault with intent to commit murder in violation of A.R.S. § 13–248, and sentenced to serve not less than twenty-five nor more than thirty years in the Arizona State Prison. From this judgment and conviction, defendant appeals.

In the evening of February 25, 1965, the defendant, in company with three unidentified persons, entered the Food City Market at 1648 South 16th Street, Phoenix, Arizona. One of defendant's companions ordered a package of meat, and defendant put it under his sweater and walked out of the store without paying for it. These actions were observed by an employee of the market, who told the meat department manager, Ray L. Hagerty. Mr. Hagerty followed defendant out of the store and said to him and his companions, "If you are going to shop in your pocket, shop someplace else." Defendant cursed him and when Mr. Hagerty turned to look for help, defendant struck him to the ground with his fist. Defendant then repeatedly and viciously kicked and struck Mr. Hagerty until another employee, Ascencion Najera, secured a gun and stopped the attack. Defendant attempted to run away but was recaptured by Mr. Najera and held at gunpoint until the police arrived. Mr. Hagerty suffered severe and lasting injuries from the attack, including scarring and partial loss of vision.

Defendant was brought to trial on August 18, 1965, before the Honorable Judge Val A. Cordova, in the Superior Court of Maricopa County. The jury rendered a verdict of guilty of the crime of Assault with Intent to Commit Murder, a felony, in violation of A.R.S. § 13–248. He was sentenced to serve not less than twenty-five nor more than thirty years in the Arizona State Prison. From this conviction and sentence, he brings this appeal.

■ Defendant's first question presented is whether the court erred in failing to grant a continuance on the ground that the community was saturated with highly prejudicial news stories concerning defendant. The case at bar was tried on August 18, 1965. From August 9th through 11th, newspaper articles were released in the community by the Arizona Republic and the Phoenix Gazette, informing the public that defendant was not only charged with this crime, but also was being held on a charge of first degree murder, arising from a separate incident. There were three short news articles and one commentary by a local columnist. All mentioned the present case, the murder case, and the fact that defendant had previously been convicted of a felony.

■ It is settled in this state that the trial court's ruling on a motion for continuance will not be disturbed on appeal, except on a clear showing of abuse of discretion. Everett v. State, 88 Ariz. 293, 356 P.2d 394; Rule 241, Arizona Rules of Criminal Procedure, 17 A.R.S. In the instant case we do not feel the court has abused its discretion. Defendant did not cause the examination of the jury to be included in the transcript of record and has failed to show in any way that any of the prospective jurors were even informed of the news articles prior to the trial, much less that they were prejudiced or influenced by them. The articles were not so inflammatory or extensive as to arouse the passions of the community or otherwise deprive defendant of a fair trial.

■ Defendant's second question presented is somewhat similar in that it also relates to the news media, but it involves an incident which took place after the trial had commenced. This was a two day trial. On the evening of the first day and the morning of the second, news of the trial was released by the aforementioned newspapers and an unidentified radio station. The newspaper articles again mentioned the other charge pending against defendant for first degree murder.

On the morning of the second day, and before the defense presented its case in chief, the jury was polled by defense counsel in regard to whether any of them had read or heard anything concerning the trial or defendant since the trial began. Four jurors indicated they had read newspaper articles on the subject. A fifth juror indicated that he had heard a short report over the radio. The jurors concerned were then interrogated individually by defense counsel in respect to their ability to remain fair and impartial. The court then questioned the jury as follows:

"THE COURT: Do you who raised your hands in response to the question by Mr. Machmer, attorney for the defense, I will ask you directly if you will judge this case according to the evidence that you have heard and may hear from the witness stand, and the law as I shall give it to you, and consider nothing else but the evidence and the law in the case, can you all do that? Is there any one of you who feels you cannot do that?

"NOTE: There is no response.

"THE COURT: By your silence I take it that your answer is that you all feel that you could do that and try this defendant upon the evidence in the case which you have heard from the witness stand, is that correct?

"NOTE: The jurors nod in the affirmative.

"THE COURT: All right, gentlemen. You may proceed."

Defense counsel then proceeded with his opening statement and the presentation of his case in chief. He did not move for a mistrial or make any motion on the ground of the exposure of these news articles to the jury.

■ This court has previously held that extraneous evidence prejudicial to the defendant which reaches the jury by way of the news media may be cause for reversal under the proper circumstances. Babb v. State, 18 Ariz. 505, 163 P. 259. See also, Marshall v. United States, 360 U.S. 310, 79 S.Ct. 1171, 3 L.Ed.2d 1250. The determination, however, of whether the jury's exposure to newspaper accounts while the trial is in progress is ground for a new trial or mistrial rests to a large degree in the sound discretion of the trial court. Marshall v. United States, supra; United States v. Howell, 3 Cir., 240 F.2d 149; State v. Thompson, 273 Minn. 1, 139 N.W.2d 490; People v. Gambino, 12 Ill.2d 29, 145 N.E.2d 42; State v. McLaughlin, 250 Iowa 435, 94 N.W.2d 303; Thistle v. People, 119 Colo. 1, 199 P.2d 642; State v. Cunningham, 173 Or. 25, 144 P.2d 303. In the instant case, not only was the trial court satisfied with the failure of any prejudice resulting from the incident, but evidently the defendant was also satisfied, for he raised no objection and made no effort to have the jury discharged and a new trial granted. It was not until after the jury found against him that defendant made the motion for a new trial on this ground. The rule of law in this regard is set forth in 31 A.L.R.2d 417, 435 as follows:

"Even though it appears that newspaper accounts of the trial were read by the jury, the right to assert this as a ground for having the verdict set aside may be waived. Thus, if the reading of the accounts by the jury during the trial is known to a party and he makes no objection at the time, any right on his part to a new trial, mistrial, or reversal on that ground will be deemed waived. [Numerous cases cited]"

The defendant waived his right to a new trial on this ground. Therefore the trial

court did not abuse its discretion in denying the motion.

■ Defendant contends that an admission made while in police custody was unlawfully admitted in evidence. In support of this contention, he relies on the United States Supreme Court cases of Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977; and Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694. In the case at bar, only Escobedo is controlling, as the trial was after the Escobedo case and before Miranda. Johnson v. State of New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882; State v. Intogna, 101 Ariz. 275, 419 P.2d 59.

■ Defendant was arrested and taken to a police interrogation room by Police Detective John Sellers. Detective Sellers' testimony of what subsequently transpired is as follows:

"Q Now, at this time did you advise the Defendant of his Constitutional Rights?

"A Yes, I did.

"Q And what did that consist of?

"A I advised Mr. Chambers of his rights as a United States citizen, that under the Constitution he had the right to an attorney, that he did not have to talk to me, and that he could remain silent, that if he did talk to me anything he told me from that point on could be used against him in a Court of Law.

"Q Are there any plaques in the interrogation room which also advise anyone who can read of these rights?

"A Yes. There is also a large plaque, I would say it is sixteen inches wide and twenty-four inches high. And this is printed both in English and Spanish, listing and describing the full rights of a citizen after he has been arrested.

"Q Did you make any promises of immunity to the Defendant, any type of promises at all?

"A. No, I did not.

"Q Was there any coercion or threats made to the Defendant in your presence?

"A No, there was not.

"Q Did you have a conversation with the Defendant?

"Yes, I did.

"Q And what, if anything, did you say to him?

\* \* \* \* \* \*

"Q Relate the conversation to the jury, please, between you and the Defendant.

"A. I asked Mr. Chambers to relate as best he could remember what happened at the grocery market. And at this time he refused to divulge any information to me. I asked him specifically why he hit the old man. And Mr. Chambers blurted out and said, 'I hit him with everything I had. I tried to kill him.' And I went on and asked Mr. Chambers why he went in the store, and he said that he went in there to see his girlfriend. I asked Mr. Chambers to identify his girlfriend and he refused to do so. The interrogation was concluded at this point when he told me that he no longer wished to talk to me any further.

"Q Did you talk to him any further?

"A No, I did not, not about this case, anyhow."

There is no doubt but that this was custodial interrogation. State v. Intogna, supra. Likewise, it is clear that defendant was advised of his constitutional rights. Although the foregoing testimony and other evidence show that defendant remained silent for a period following the first question, he readily answered the second. He then stated that he would like to talk to his attorney, and Detective Sellers immediately terminated the interrogation.

Under this state of facts, we feel both the court and jury were justified in finding the admission voluntary under the rule expressed in Escobedo v. Illinois, supra.

■ Defendant contends the trial court erred in admitting in evidence photographs depicting the injuries sustained by Mr. Hagerty. The photographs were taken

in the emergency room of the hospital approximately an hour or two after the beating. Detective Sellers was present when they were taken and testified that they portrayed a true and accurate representation of the victim as he appeared at that time. Police Officer Thomas Herrick testified the pictures depicted Mr. Hagerty, but he looked worse at the scene of the crime than he did in the photographs. The admission or exclusion of illustrative photographs is a matter largely within the discretion of the trial court. State v. Copley, 101 Ariz. 242, 418 P.2d 579.

The photographs were of probative value in that they depicted the nature and severity of the assault. The injuries revealed in the pictures corroborate the testimony of the witnesses that the victim was kicked repeatedly and with great force. In this case the wounds had been cleaned at the time the photographs were taken, and the patient was shown lying on a hospital bed. In a similar case, State v. Lee, 80 Ariz. 213, 295 P.2d 380, 56 A.L.R.2d 1166, we stated:

"* * * [T]he surrounding circumstances [indicate] beyond all doubt that the wounds photographed were the same wounds received in the attack. As far as the relative condition of the lacerations is concerned between the day of the assault and the day the pictures were taken, it is not open to serious question that the wounds were in better condition when photographed since the victim had had the benefit of a doctor's care and hospital treatment at the later date. We believe the admission of such photographs, not taken immediately or shortly after the incident is a matter within the trial court's discretion; Wigmore on Evidence, Vol. II, Section 437, Vol. III, Section 792, and that in this case such discretion was clearly not abused. See Young v. State, 1931, 38 Ariz. 298, 299 P. 682; Browning v. State, 1939, 53 Ariz. 174, 87 P.2d 112." 80 Ariz. at 215, 295 P.2d at 381, 56 A.L.R.2d at 1169

The trial court did not err in admitting the pictures in evidence. State v. Copley, supra; State v. Goodyear, 98 Ariz. 304, 404 P.2d 397, rehearing 100 Ariz. 244, 413 P.2d 566; State v. Sherrick, 98 Ariz. 46, 402 P.2d 1, cert. denied 384 U.S. 1022, 86 S.Ct. 1938, 16 L.Ed.2d 1024; State v. Barker, 94 Ariz. 383, 385 P.2d 516; State v. Robinson, 89 Ariz. 224, 360 P.2d 474; State v. Lee, supra; Burgunder v. State, 55 Ariz. 411, 103 P.2d 256; Young v. State, 38 Ariz. 298, 299 P. 682.

 Defendant also contends the sentence of twenty-five to thirty years is excessive. Under the circumstances of this case, and, in the light of the fact that defendant has an extensive criminal record, we see no error in this regard.

Affirmed.

STRUCKMEYER and UDALL, JJ., concur.